NATIONAL HOLLOW BRAKE–BEAM CO. et al. **v.** INTERCHANGEABLE BRAKE–BEAM CO.

CHICAGO RY. EQUIPMENT CO. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. February 28, 1901.)

No. 1,416.

1. PATENT A CONTRACT—RULES OF CONSTRUCTION.

   A patent is a contract, and its construction is governed by the same canons of interpretation that control the construction of other grants and agreements.

2. PATENT NOT ANTICIPATED OR LIMITED BY SIMILAR DEVICE IN REMOTE ART NOT ANALOGOUS.

   A machine or combination which is not designed by its maker, nor actually used, nor apparently adapted, to perform the function of the patented machine or combination, but which is discovered in a remote art, and was used under radically different conditions to perform another function, neither anticipates nor limits the patent.

3. PROOF OF PRIOR USE MUST BE BEYOND REASONABLE DOUBT.

Unsupported oral testimony of a prior use is always open to suspicion. and it cannot prevail over a patent, unless it is sufficient to establish such a use beyond a reasonable doubt.

4. NEW COMBINATION OF OLD ELEMENTS PATENTABLE.

A new combination of old elements, by which a new and useful result is produced, or an old result is obtained in a more facile, economical, and efficient way, may be protected by patent as securely as a new machine or composition of matter.

5. EXTENSIVE USE NOT CONCLUSIVE OF NOVELTY.

The extensive use of a machine or combination which is clearly without novelty does not dispense with that statutory requirement, and it will not sustain a patent.

6. EXTENSIVE USE PERSUASIVE EVIDENCE OF NOVELTY.

Where the question of novelty is fairly open for consideration under the law, the fact that a patented device or combination has displaced others which had previously been used to perform its function, and has gone into immediate and general use, is pregnant and persuasive evidence that it involves invention.

7. SECOND CLAIM OF PATENT NO. 361,009 VALID.

The second claim of letters patent No. 361,009, to Phillip Hien, dated April 12, 1887, is valid, and secures a novel and useful invention.

8. FUNCTION OF DEVICE NOT PATENTABLE.

The function or result of the operation of a machine or combination may not be the subject of a patent under the acts of congress. The means by which the function is performed, and those alone, are patentable.

9. COMBINATION OF MECHANICAL ELEMENTS AND THEIR FUNCTION NOT PATENTABLE.

A combination of an earlier combination of mechanical elements and a function of that earlier combination is not the subject of patent.

10. PATENTEE ENTITLED TO ALL USES OF INVENTION. WHETHER KNOWN OR NOT.

A patentee is entitled to all the uses to which his patented device or combination can be put, and all the functions it will perform; whether or not he was aware of or described them when he procured his patent.

11. CLAIMS 1, 5, AND 7 OF PATENT NO. 480,194 ANTICIPATED BY PATENT NO. 361,009.

The second claim of letters patent No. 361.009, to Phillip Hien, April 12, 1887, secured to the patentee the exclusive use of the combination there specified, whether resilience or camber in the beam is utilized or not; and it anticipates the first, fifth, and seventh claims of letters patent No. 480,194, to Phillip Hien, dated August 2, 1892.

12. PRIMARY AND SECONDARY PATENTS—APPLICATION OF DOCTRINE OF MECHANICAL EQUIVALENTS.

One who invents and secures a patent for a machine or combination which first performs a useful function is protected thereby against all machines or combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes and claims, or colorable evasions thereof.

13. MECHANICAL EQUIVALENT—INTERPRETATION.

The term "mechanical equivalent," when applied to the interpretation of a pioneer patent, has a broad and generous signification. When applied to a slight and almost immaterial improvement, it has a very narrow and limited meaning. When applied to that great majority of inventions which falls between these two extremes, its significance is proportioned to the character of the advance or invention under consideration. and it is so interpreted by the courts as to protect the inventor against piracy and the public against unauthorized monopoly.

14. PATENTS FOR COMBINATIONS—DOCTRINE OF MECHANICAL EQUIVALENTS EQUALLY APPLICABLE AS TO OTHER PATENTS.

The doctrine of mechanical equivalents is governed by the same rules and has the same application in a case in which the infringement of a patent for a combination is in question as in cases where the issues are over the infringement of patents for machines or compositions of matter.

15. INFRINGEMENT—CHANGE OF FORM WILL NOT AVOID.

Mere changes of the form of a device, or of some of the mechanical elements of a combination secured by patent, will not avoid infringement, where the principle of the patented invention is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention.

16. INDEPENDENT INVENTIONS PATENTABLE WHERE ADVANCE IN ART GRADUAL.

Where the advance towards the desideratum is gradual, and several inventors independently form several combinations, which accomplish the general result with varying degrees of operative success, each is entitled to his own combination, so long as it differs from those of his competitors, and does not include theirs.

17. LIMITATION OF CLAIM BY REJECTION AND AMENDMENT.

Acquiescence in the rejection of a claim on references cited in the patent office, and the acceptance of a patent on an amended claim, estops the patentee from maintaining that the amended claim covers the devices shown in the references, and that it has the breadth of the claim rejected; but this is the limit of the estoppel.

18. SAME.

A patentee who has acquiesced in the rejection of his original claim, because it was said by the examiner to be anticipated by references he made, is not thereby estopped from claiming and securing by an amended claim every new and useful improvement he has invented that is not disclosed by those references.

19. DESCRIPTION OF DETAILS NOT CLAIMED NOT A LIMITATION.

The description in a specification or drawing of the details which are not claimed to be essential elements of the patented device or combination, and are not such, is the mere pointing out of the better method of using it, and does not limit it to those details.

20. LIMITATION BY REFERENCE IN CLAIM TO FIGURES OR LETTERS IN DRAWING.

A reference in a claim of a patent to a letter or figure used on the drawing and in the specification to describe a device or an element of a combination does not limit the claim to the specific form of that device or element there shown, unless that particular form was essential to, or embodied the principle of, the improvement claimed.

21. CONSTRUCTION OF TERMS OF PATENT.

That interpretation which sustains and vitalizes the grant of a patent should be preferred to that which strikes down and paralyzes it.

22. INFRINGEMENT NOT AVOIDED BY USE OF DIFFERENT MEANS OF FASTENING OR OPERATING COMBINATION.

One who appropriates a new and useful patented combination cannot escape infringement by the use of common mechanical devices to unite or operate its elements which differ from those which are pointed out for the purpose, but which are not claimed in the patent.

23. DEVICE OF PATENT NO. 609,396 INFRINGES SECOND CLAIM OF PATENT NO. 361,009.

The combination of letters patent No. 609,396, issued August 23, 1898, to Francis P. Aglar, infringes the second claim of letters patent No. 361,-009, issued April 12, 1887, to Phillip Hien.

24. ABSENCE OF ONE ELEMENT OF COMBINATION AVOIDS INFRINGEMENT.

The absence from a device that is alleged to infringe a patented combination of a single element of that combination is fatal to the claim of infringement.

25. CLAIMS 3, 4, 5, 6, AND 8 OF PATENT 480,194, 1 AND 2 OF PATENT 466,984, AND 5
    OF PATENT 486,218 NOT INFRINGED BY DEVICE OF PATENT 609,396.
        Claims 3, 4, 5, 6, and 8 of patent No. 480,194, of August 2, 1892, to Phillip
    Hien, claims 1 and 2 of patent No. 466,984, of January 12, 1892, to Henry
    B. Robischung, and claim 5 of patent No. 486,218, of November 15, 1892,
    to Robischung, are not infringed by the device of patent No. 609,396, of
    August 23, 1898, to Francis B. Aglar.

26. CLAIM 6 OF PATENT 345,093 VOID.
        Claim 6 of letters patent No. 345,093, to George Westinghouse, Jr.,
    dated July 6, 1886, is void, because the combination it claims was aban-
    doned and placed on sale by the patentee more than two years before he
    applied for the patent.

27. CLAIM 2 OF PATENT 430,755 VOID FOR LACK OF INVENTION.
        Claim 2 of letters patent No. 430,755, to Henry B. Robischung, dated
    June 24, 1890, is void because the creation of the combination it specifies
    involved no invention.

(Syllabus by the Court.)

Appeals from the Circuit Court of the United States for the Eastern
District of Missouri.

In the year 1897 the Chicago Railway-Equipment Company brought a suit
in equity in the court below against the Interchangeable Brake-Beam Company
for the infringement of letters patent No. 486,218, issued to Henry B. Rob-
ischung, for improvements in brake beams. At the same time the National
Hollow Brake-Beam Company and the Chicago Railway-Equipment Company
exhibited their bill in equity in the court below against the Interchangeable
Brake-Beam Company, and prayed for an accounting and an injunction on
account of the infringement of letters patent No. 361,009, issued on April 12,
1887, to Phillip Hien, for improvements in brake beams for railway cars; let-
ters patent No. 480,194, issued on August 2, 1892, to Phillip Hien, for improve-
ments in brake beams; letters patent No. 345,093, issued on July 6, 1886, to
George Westinghouse, Jr., for an improvement in railway brakes; letters pat-
ent No. 430,755, issued on June 24, 1890, to Henry B. Robischung, for improve-
ments in clamps for safety chains and finger guards of brake beams, and for
analogous cases; and letters patent No. 466,984, issued to Henry B. Rob-
ischung, on January 12, 1892, for improvements in brake beams. Each one
of the parties to these suits was a corporation. The defendant interposed
the usual defenses. The testimony in the two suits was taken, and they were
heard together. When the hearing was reached the title of the complainant
to the various patents was established, and all controversy over many of their
claims was eliminated; but there remained 14 upon which the parties de-
manded the opinion and decree of the court. Each of these claims was care-
fully considered by the circuit court, and thereupon it dismissed both of the
bills, for the reasons stated in its opinions, which will be found in 99 Fed.
758, 777. The defeated parties appealed from the decrees dismissing their
bills, the two suits were consolidated by order of the circuit court when it
allowed the appeals, and all the questions now at issue in both suits have been
heard and determined in this court in the consolidated case.

Paul Bakewell (F. W. Ritter, Jr., on the brief), for appellants.
George S. Payson (John W. Noble and George H. Shields, on the
brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered
the opinion of the court.

Four of the fourteen claims in issue upon these appeals involve the
cardinal principle of the appellants' hollow metallic brake beam.
The remaining ten relate to slight improvements and minor details of

construction. The four cardinal claims are the second claim of patent No. 361,009, to Hien, dated April 12, 1887, and the first, second, and seventh claims of patent No. 480,194, to him, dated August 2, 1892. The subject of these claims is a hollow metallic railway brake beam. The object which the patentee sought to attain was to provide a lighter, simpler, less expensive, and more efficient brake beam than any then in use. The automatic air brake of Westinghouse, then fast approaching perfection, its increasing use in the railway service of the country, and the constantly growing size of cars and weight of train loads, made the brake beams of earlier patterns inadequate and unsatisfactory, and demanded a corresponding advance in their character. The Railway Master Mechanic of August, 1888, said:

"Better brake beams and better brake rigging are absolutely essential to the success of power brakes."

In the same year the proper committee of the Master Car-Builders' Association established as the standard requirement for a brake beam on freight cars a capacity to withstand a load of 7,500 pounds applied at the center without deflecting more than one-sixteenth of an inch, and for a brake beam on passenger cars a capacity to withstand a load of 15,000 pounds applied at the center without a greater deflection. The tremendous impact of these loads was to be suddenly and repeatedly applied, and a brake beam was to be furnished which would withstand this application through long periods of time without disruption, and without losing its power to resist deflection. The problem was grave and difficult, and to him who successfully solved it honor and reward were justly due. Many men interested in railway equipment worked and searched for the solution, and among them the patentee, Phillip Hien. He attempted to supply the acknowledged want, and to this end he devised, described, and claimed a trussed hollow metallic brake beam, which completely filled the requirements of the Master Car-Builders' Association, and which went into such immediate and general use upon the railroads of the land that in 1892 85 per cent. of these railroads, controlling 80 per cent. of the cars using iron brakes, had adopted those made under these patents to Hien, and in 1898 more than 1,000,000 brake beams constructed under these patents had been manufactured and sold. These facts establish neither the novelty nor the patentability of his device, but they certainly challenge admiration, and demand that the presumption of validity which supports his patents shall not be stricken down without careful consideration and cogent and convincing proof. The keen, shrewd, mercantile spirit of this age is seldom deceived into the purchase and continued use of worthless improvements in mechanical devices, and, when all is said, success is by no means the poorest criterion by which to judge of the acts and words of men.

Hien could not be, and was not, a pioneer in the art he illustrated, in the sense that he first conceived the principle of a brake beam, or the mode of operation of a trussed brake beam, or first devised the means of carrying those ideas into effective operation. It must be remembered, however, that an improvement of an old device or a new combination of old elements not infrequently marks a greater advance in the art and discloses a more useful invention than the con-

ception of the original machine or a knowledge of the old elements of the combination, and that such an improvement is equally entitled with the conception of the original device to the protection of a patent. The greater part of the advance in nearly all mechanical arts consists in improvements of old devices and in new combinations of old elements, and the useful inventions which attest this progress are not to be deprived of the benefit of the patent law because they do not mark the first step in the movement. Not only the first and last, but every intermediate, step of the advance which rises to the dignity of invention, is entitled to the protection of a patent. It was such a step that Hien claimed to have taken,—such an improvement that he claimed to have made. Trussed wooden brake beams and trussed iron brake beams were old. All the mechanical elements with which he worked were well known, and his device is only a new combination of old elements. But the appellants claim that this new combination met the demand of the hour, and by a new mode of operation accomplished the desired result, more efficiently and satisfactorily than it had ever been reached before.

Some of the essentials of an effective brake beam, which Hien sought to secure, and which he did embody in his structure, were (1) that it should be strong and durable enough to withstand the oft-repeated shocks of a load of from 7,500 to 15,000 pounds suddenly applied at its center without deflecting more than one-sixteenth of an inch; (2) that it should be light in weight and simple in construction; and (3) that it should be capable of producing, maintaining, and adjusting a curvature and resilience in the beam, whereby the rigidity of the structure and the coning of the brake shoes to the tread of the wheels of the car could be readily regulated and adjusted. The elements which Hien combined to secure these essentials and to attain his object were (1) a hollow or tubular metallic beam, corresponding to the tie rod of a truss, called the "compression member," which was cut away or provided with slots on one side to permit the passage of the ends of the truss rod, called the "tension member"; (2) a metallic bar, corresponding with the king post of a truss, called a "strut," provided with a slot for the reception of the brake lever, an eye at one end to receive the tension member, and a clamp at the other end to secure it to the compression member; (3) a metallic rod, corresponding to the truss rod of a truss, called the "tension member," provided with threads on each end to receive nuts; (4) plugs or caps to inclose the ends of the compression member, provided with holes for the passage through them of the ends of the tension member, with recessed nut seats with surfaces at right angles to the lines of the ends of the tension member, with circular shoulders a short distance from their inner ends which fit tightly upon the ends of the compression member and permit the caps to enter therein for a short distance only, and with lugs or projections which extend through the slots in the compression member and into notches in the brake head; and (5) nuts screwed tightly upon the ends of the tension member to hold beam, caps, and brake head securely together.

This brake beam was constructed in this way: The strut was clamped to the compression member, the tension member was inserted

into the eye of the strut, and its threaded ends were passed through the slots in the ends of the compression member; the brake heads, which were provided with circular clamps or openings fitting the ends of the compression member, and with notches or depressions for the reception of the lugs on the caps, were slipped upon the ends of the compression and tension members; the threaded ends of the tension members were passed through the caps, which were placed upon the ends of the compression member; and suitable nuts were screwed upon the ends of the tension member. The result was a strong, light, simple, adjustable brake beam. Each brake head was prevented from moving along the beam by the tension member on one side and the cap on the other; the cap, beam, and brake head were securely locked together, and prevented from rotating upon each other by the engagement of the lug on the cap with the slot in the compression member and the notch in the brake head; a curve and a resilience could be imparted to the brake beam, and the face of the brake shoe could be coned to the tread of the car wheels by tightening the nuts upon the tension member; and this curvature, resilience, and coning could be maintained, adjusted, and regulated by the mere turning of the nuts on the ends of the tension member. The patentee claimed his combination in these words:

"(2) The combination, in a brake beam, of a hollow beam, a strut, end plugs or caps, 8, and a truss rod, 3, which extends through the caps, 8, and is provided with nuts, substantially as and for the purposes specified."

Some of the distinguishing characteristics of this combination are (1) its lightness, compactness, and simplicity, which result from the use of a hollow metallic beam and the passing of the ends of the tension member through the ends of the compression member, thereby combining the elements of the structure in a very limited space; (2) its constant adjustability by the mere turning of the nuts on the ends of the tension member, whereby the curvature of the beam, the coning of the brake shoes, the spring of the beam, and the rigidity or tension of the structure may be easily and speedily produced; and (3) its superior efficiency in practice, which is established beyond cavil by its extensive use.

After Hien had devised this combination, he discovered that the production and maintenance of a spring or resilience in the compression member made his combination far more efficient and useful than it had been without it. This resilience he produced by means of a combination, formed on the same principle as that described in his first patent, but differing somewhat in the forms of its elements and the details of its construction. These changes in forms and details are not secured by, and are immaterial to the consideration of, the three claims of his second patent which we are about to discuss, and for that reason they will be laid aside for the present. So far as the first, second, and seventh claims of the second patent are concerned, the resilience in the compression member was produced by tightening the nuts of the brake beam of the first patent until the compression member was so curved or bowed that it had a constant and strong tendency to spring back to its original position; and this resilience was adjusted and perpetually maintained in use by the same means.

The capacity of this brake beam to produce and adjust the curvature and resilience of the beam and to cone the shoes to the tread of the wheels thereby, proved a determining factor in the success of Hien's invention. The resilience gave a perpetual tension and rigidity to his structure, which aided in preventing its deflection under the sudden shocks of the loads it was required to bear, and thus enabled it to meet the requirements of the railroad companies, while it locked the nuts upon the tension rods, since they could not turn under the strain which the spring of the beam imposed upon them, and all the parts of the structure remained securely fastened together. It was the union of this resilience of the beam, produced and maintained by means of the combination of mechanical elements claimed in his first patent with that old combination, which produced the successful brake beams that have now gone into such general use upon the railroads of the country. Hien undertook to secure this combination by his second patent. In the specification of that patent he described the means by which he produced the resilience. He carefully distinguished the spring of the beam, which he perhaps unfortunately called "camber," from a set camber or curve in a beam, and declared that the camber which constituted one of the elements of his combination was the adjustable resilience or spring of the compression member, produced and maintained by the use of the nuts in a combination similar to that described in his first patent. He claimed his second combination in these words:

"(1) A metallic brake beam, consisting of a compression member, a tension member, and an interposed strut; the compression member having a camber, and the beam structure containing means of adjustment whereby the camber of the compression member is produced and the resiliency of the beam made available.

"(2) A metallic brake beam, consisting of a hollow compression member, a tension member, and an interposed strut; the compression member having a camber, and the beam structure containing means of adjustment whereby the camber of the compression member is produced and the resiliency of the beam made available."

"(7) In a trussed brake beam, the combination of a tension member having threaded ends and nuts therefor, a strut, and a cambered compression member, which maintains the tension of the parts and prevents the rotation of the nuts, substantially as specified."

The brake beam described and claimed by Hien in his first patent, and that used by the appellee in these suits, are illustrated by the following drawings:

HIEN'S BRAKE-BEAM

*Fig 1.*

APPELLEE'S BRAKE-BEAM.

The only difference in the two devices is in the end plugs or caps, and consists in the fact that Hien's cap, which is shown by the figure marked "8" at the left of the drawing of his brake beam, has a recessed nut seat, enters a short distance within the beam, and locks itself with the beam and brake head by means of a lug, while the appellee's cap does not enter the beam, has a raised nut seat, and locks itself with the brake head, which is fastened to the beam by a lug thereon, by means of shoulders on its periphery which engage with the corresponding projections on the end of the brake head. The form of the cap used by the appellee is illustrated by figures 3 and 4.

The contention of the appellee is that the appellants are entitled to no relief in these suits, upon the four claims now under consideration, because (1) there was no novelty or patentability in the combinations they specify, and (2) if they were patentable, the claims were so restricted by the state of the art, by the proceedings in the patent office, and by the express terms of the claims that the doctrine of mechanical equivalents is inapplicable to them, and the brake beam of the appellee does not infringe upon the franchises they grant.

A patent is a contract by which the government secures to the patentee the exclusive right to vend and use his invention for a few years, in consideration of the fact that he has perfected and described it and has granted its use to the public forever after. The general rules for the interpretation of grants and contracts govern its construction, and the equitable principle that one who has derived great benefit from the performance of a contract ought not to be allowed to escape its burdens without cogent reasons is not inapplicable in its exposition. Among the primary rules for the construction of a contract are these: The court should put itself in the place of the parties at the time it is made, and should read its terms in the light of the facts and circumstances which then surrounded them. When the intention of the parties is manifest, it should control, regardless of inapt expressions and technical rules. In cases of doubtful validity or of ambiguous terms, that construction should be adopted which sustains and vitalizes the agreement, rather than that which destroys or paralyzes it. Prior negotiations are merged in the contract, and, while they may be considered to interpret its purpose, they must not

be permitted to contradict or modify its express meaning. Let us read and interpret these patents in the light of these principles.

A compliance with the first rule requires a knowledge of the state of the art of constructing brake beams when these grants to the patentee were made, and in reviewing its history the patentability of the combinations of Hien and the limitations imposed upon his claims by the state of the art when the patents were issued will be alike considered. Before entering upon the consideration of the state of this art in 1887, a few references, which cannot be permitted to affect either the validity or the scope of the patents, will be noticed and laid aside.

On April 25, 1876, letters patent No. 176,522 were issued to George W. Eddy, and on November 15, 1887, letters patent No. 373,328 were issued to Joel F. Bales, for improvements in whiffletrees. The application for the latter patent was not filed until September, 1887, and the patent was not issued until November in that year, while Hien's first patent was issued on April 12, 1887. The patent to Eddy describes a trussed whiffletree, in which the ends of the truss rod and the ends of the tie rod are welded or riveted together and provided with threads for screws, by means of which caps having eyes for the traces are screwed upon the ends of the whiffletree. In the latter part of the specification of this patent a whiffletree that is said to be adapted for light draft is described, in which the ends of the truss rod, which are provided with threads for nuts, pass through the ends of the tie rod and receive caps, which are adapted to inclose the ends of the tie rod and to be screwed upon the ends of the truss rod until they bear against the ends of the tie rod. This construction differs from that of Hien in that its caps are made to turn on the ends of the rods, instead of being securely locked against rotation as in the patents of the appellants. Regardless, however, of the similarity or difference of these devices the art of constructing whiffletrees, like the art of building bridges, is so remote from that of manufacturing brake beams for railway cars that trusses for either of the former purposes cannot be permitted to anticipate or limit the scope of the patents of the appellants. The circumstances under which trusses for bridges and for whiffletrees are to be used, the essential requirements of structures for those purposes, the functions they are to perform,— all these are so radically different from the circumstances, requirements, and functions which condition the use of railway brake beams that the efficiency and practicability of specific trusses for the former structures would not be likely to suggest to the skilled mechanic their use or their efficiency for railway brake beams. Trusses for the former purposes were neither designed, apparently adapted, nor actually used to perform the function of stopping railway trains, and the art which they illustrated was not in any way analogous to that in which the patentee, Hien, invented and used his combinations. A machine or combination which is not designed by its maker, nor actually used nor apparently adapted to perform the function of a patented machine or combination, but which is discovered in a remote art and was used under radically different conditions to perform another function, neither anticipates nor limits the scope of the patent. Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 18, 12 Sup. Ct. 601, 36 L. Ed. 327; Topliff v. Topliff, 145 U. S. 156, 161, 12 Sup. Ct. 825,

36 L. Ed. 658; Potts v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Westinghouse v. Air-Brake Co. (C. C.) 59 Fed. 581, 590; Walk. Pat. (2d Ed.) p. 54, § 68.

On May 19, 1898, one Hoffman, a witness for the appellee, testified that he built trucks in the Toledo shops of the Wabash & Western Railroad Company in 1874, and that he knew the kind of brake beams that were used on these trucks. He was asked to describe them, and he testified that they were trussed wooden brake beams, but failed to relate how the ends of the truss rod and the tie rod were attached to each other. He was taken to a car at Decatur, Ill., and shown a trussed wooden brake beam thereunder, in which the ends of the iron tension rod passed through the ends of the wooden brake beam, and through iron plates thereon, and were secured in place by nuts screwed upon their threaded ends, and was then asked if the brake beams he found on the trucks in 1874 were like this beam. He answered that they were. On cross-examination he said that the Wabash Railroad Company was not using in 1898 any brake beams of this kind, except on old cars such as had been retired. Wood, another witness for the appellee, made a drawing of this brake beam in 1898, and then the brake beam and the drawing were offered in evidence. A third witness testified that he was a carpenter, and was working on railway trucks for the Wabash Railroad Company at its shops in Toledo in 1874. The brake beam which had been found under the car at Decatur in 1898 was shown to him, and he testified that he recognized it, and that he had bored a hole in it in 1874. No drawing or plan of this or of any similar beam, made in 1874 or at any time prior to 1898, was produced. The claim of the beam itself to antiquity rests on the testimony of one witness that he identified a hole in it in 1898 which he bored in 1874, and the use of such beams by the Wabash Railroad Company at that time is sustained by the testimony of but one other witness to the effect that beams like this one were in use at that time. The solemn grants of great franchises cannot be stricken down by testimony so flimsy and unsatisfactory. The memory of men is too brief and fleeting, too easily swayed by chance and by interest, to permit the recollection of one or two witnesses, prompted by presently prepared pictures of the proof desired, to condition the validity of valuable patents that have stood unchallenged for years. Unsupported oral testimony of a prior use is always open to suspicion, and it cannot prevail over the legal presumption of validity which accompanies the patent, unless it is sufficient to establish such a use beyond a reasonable doubt. The testimony relative to the use of this Wabash beam is not of that character, and it will not be further considered. Mast, Foos & Co. v. Dempster Mill-Mfg. Co., 82 Fed. 327, 332, 27 C. C. A. 191, 195, 49 U. S. App. 508, 516; In re Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154; Deering v. Harvester Works, 155 U. S. 286, 300, 15 Sup. Ct. 118, 39 L. Ed. 153; Miller v. Handley (C. C.) 61 Fed. 100, 102.

For the same reason the evidence of the use in 1884 and earlier of a double trussed wooden beam on the Burlington Railroad must be disregarded. It consists of the testimony of three witnesses, a drawing bearing the date August 4, 1882, and several blue prints, which were evidently made after the patents to Hien were issued. No one

comes to testify that the drawing of 1882 was made at that time, or that any brake beams were constructed under it prior to the issue of the first patent to Hien. It is sought to deduce that fact from certain testimony as to the custom of the office where it was found, and from this alone. This drawing pictures a wooden brake beam with two tension rods, which do not pass through the end of the beam, but through ears on the sides of iron plates upon the ends of the beam. It does not clearly show whether these tension rods were secured by upset heads or by threads and nuts. Two witnesses testify that brake beams similar to that shown by this drawing were used by the Burlington Railroad in 1884. Another witness, after examining blue prints of such a beam made after the patents were issued, testifies that such beams were in general use upon the railroads in the '70's, and that they were cambered by the use of nuts upon the ends of the rods. If these were facts, and if they were of importance, there must have been working drawings from which some of these beams were constructed, and witnesses who could have identified such drawings and could have testified to the actual construction of the beams which were used, and to the times, places, and circumstances of their use. In the absence of any evidence of this character, the proof of the prior use of this beam upon the Burlington Railroad in 1884 is too uncertain, indefinite, and inconclusive to warrant a court in overthrowing the grants to Hien, and it will be here dismissed with the remark that, even if the prior use of this beam had been established, it could not have anticipated the invention of Hien, because it lacked the peculiar combination of devices, the essential elements and attributes, which distinguish Hien's structure from all that went before it, as will be seen in the discussion of the established references which follows. We proceed with that discussion.

On April 21, 1874, letters patent No. 149,902 were issued to George Westinghouse, Jr., wherein a double-trussed wooden brake beam, which is illustrated by this drawing, was described:

### WOODEN TRUSSED BEAM OF WESTINGHOUSE

### PATENT 149,902.

This brake beam had a wooden compression member, two iron ten sion members, iron boxes, D, open at the rear for the reception of the ends of the compression member, bolts extending through the compression member near its ends from rear to front and through the fronts of the boxes, provided with threads and nuts by means of which the ends of the compression member could be drawn forward into the boxes, and recesses in the sides of the boxes and holes in their ends, through which the ends of the tension member were inserted and where these ends were rigidly secured by upset heads. This brake beam was constructed by first inserting the ends of the tension rods through the recesses in the sides and the openings in the ends of the boxes and setting up their heads. The strut was then interposed, and the ends of the compression member were drawn forward by means of the nuts on the ends of the bolts, which had been inserted through the ends of the beams and the fronts of the boxes, until the iron boxes were closed. This brake beam was so constructed that the drawing of the ends of the compression member forward into these boxes had the effect to tighten the tension rods, and the patentee remarked in his specification that this tightening might be carried so far as to give the beam a slight crown or arch. There is much dispute among the witnesses over the question whether or not a wooden beam of the requisite size and strength for a brake beam can be successfully cambered by this device. Our conclusion is that it can be. But the size and strength of the requisite wooden beam, the inherent nature of wood, its stiffness, the slight resilience of so large a beam, the cumbrous and inapt means which this device provides to produce, maintain, and adjust this spring, and the testimony of the witnesses in this case, leave no doubt that the brake beam of this patent never could be a successful competitor for practical use by the side of the simple, light, adjustable combination of Hien, and that no such structure could be a mechanical equivalent of his hollow metallic brake beam or an anticipation of his patents; nor do they leave any doubt that the combination shown by this patent has become practically obsolete. It lacks the capability which Hien's device contains of producing and maintaining resilience in the beam and of adjusting the shoe to the cone of the tread of the wheel. It lacks the adjustability, compactness, and simplicity of construction which his brake beam exhibits, and whatever it has done in the past or may accomplish in the future has not been and cannot be brought about by this wooden brake beam by the mechanical means described and claimed in Hien's combination, because it contains neither the single tension member with threaded ends passing through the ends of the compression member, nor nuts thereon securing it in place by means of which the tension of the structure, the resilience of the beam, and the coning of the shoes may be produced, adjusted, and maintained; and these are essential elements of the combination of the appellants.

Letters patent No. 145,605, issued to Daniel Wellington on December 16, 1873, and letters patent No. 142,600, issued to George Westinghouse, Jr., on September 9, 1873, describe brake beams in which the truss rods are braces, and are not tension members. In the former, the ends of the truss rods are fitted against shoulders or de-

pressions in the structures. In the latter, the truss member is composed of two rods or braces, one on each side of the strut. One end of each of these braces bears against the brake holder, while the other bears upon the end of the opposite brace, or against a block interposed between them, on the principle of the arch. Obviously these devices neither operate on the tension principle of Hien nor contain the essential elements of his combination.

The same may be said of the patent to Hedrick, No. 322,099, dated July 14, 1885, for an improvement in brake-block holders, which does not show or describe any brake beam, and which is only mentioned here for the purpose of disclosing its utter irrelevancy, in view of the fact that it was referred to by the examiner in the proceedings anterior to the issue of the patents to Hien; of letters patent No. 270,862, issued to Marden, January 23, 1883; and of letters patent No. 144,240, to Warwick and Duggan, issued on November 4, 1873, which describe simple curved or arched iron brake beams, without tension rods, caps, or nuts.

English letters patent No. 5,421, issued to Stephen Alley on December 12, 1881; letters patent No. 243,416, issued to George Westinghouse, Jr., on June 28, 1881; letters patent No. 345,093, issued to George Westinghouse, Jr., on July 6, 1886; and the Car-Builders' Dictionary of 1879,—describe brake beams of the same character and mode of operation so far as the issue now under consideration is concerned. Each of these references shows an iron brake beam in the form of a truss, in which the ends of the tension member do not pass through, but are welded to or made a part of, the compression member, so that they are incapable of movement within or upon it, and so that they cannot be used to create or maintain resilience in the beam, to change the rigidity of the structure, or to cone the shoes to the tread of the wheels. The patent to Alley discloses a beam which has a slight curvature or arch; but this bend is not capable of production or change by use of the truss rod. It is an arch set in the beam when it is made, and incapable of appreciable change or adjustment without a disruption of the entire structure. No one of these devices has the caps, the tension member with threaded ends passing through the ends of the compression member, or the nuts on the ends of the tension member, which constitute such essential elements of the combination of Hien. No one of them has the capability of producing, adjusting, and maintaining the rigidity of the structure, the spring of the beam, or the coning of the shoe by the simple expedient of turning the nuts on the ends of the tension rod; and no one of them is the mechanical equivalent of Hien's invention.

Many other patents and references were introduced in evidence in the progress of this cause, but none which illustrate more fully or more clearly than those already noticed the state of the art when the combinations described in the four claims now under consideration were secured; and the question of their patentability arises upon the facts which have now been stated.

The second claim of the first patent to Hien is for a combination of old mechanical elements in a new way. It is not for new elements, but for a new method of combining old elements; and a new combi-

nation of old elements, whereby a new and useful result is produced, or an old result is attained in a more facile, economical, and efficient way, may be protected by patent as securely as a new machine or composition of matter. Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Thomson v. Bank, 53 Fed. 250, 252, 3 C. C. A. 518, 520, 10 U. S. App. 500, 509. The prior art discloses no combination of the elements of Hien's brake beam in the way which he describes. In other words, the method of combination of the old devices which he presented was new. Nowhere in the history of the art can the tension member, with threaded ends passing through the ends of the hollow metallic compression member, and through caps thereon, secured in place by nuts on its ends, by the mere turning of which the rigidity of the structure, the resilience of the compression member, and the coning of the brake shoes to the tread of the wheels may be produced, adjusted, and maintained, be found. Yet this is the principle of his invention, the mode of its operation, the peculiar combination of devices which distinguishes it from other brake beams. Burr v. Duryee, 1 Wall. 531, 570, 17 L. Ed. 650.

Was the conception of this combination the skill of the mechanic or the intuition of the inventor? For 12 years mechanics and inventors had been looking and laboring to improve railway brake beams. They had produced the cumbrous and unadjustable double-trussed wooden beam of the patent of 1874 to Westinghouse, his rigid and unadjustable iron trussed beam, and many modified forms of these structures; but the skill of no mechanic had brought forth the simple, light, and efficient combination of Hien. He first conceived and described it. The government granted to him the right to its exclusive use. The patent itself is prima facie evidence of the novelty of his combination, and if that issue was doubtful this presumption would entitle it to a construction which would sustain, in preference to one which would destroy, the grant it evidences. In 5 years after Hien disclosed his invention and obtained his patent, his brake beam was in use on 85 per cent. of the railroads controlling 80 per cent. of the cars using iron brake beams in this country, and in 11 years from the date of his patent more than 1,000,000 of his brake beams had been made and sold. It is true that the extensive use of a machine or combination which is clearly without novelty does not dispense with that statutory requirement, and that it will not alone sustain a patent. McClain v. Ortmayer, 141 U. S. 419, 428, 12 Sup. Ct. 76, 35 L. Ed. 800; Duer v. Lock Co., 149 U. S. 216, 223, 13 Sup. Ct. 850, 37 L. Ed. 707; Olin v. Timken, 155 U. S. 141, 155, 15 Sup. Ct. 49, 39 L. Ed. 100; Klein v. City of Seattle, 77 Fed. 200, 204, 23 C. C. A. 114, 118, 44 U. S. App. 741, 748. But where the question of novelty is fairly open for consideration under the law, the fact that a patented device or combination has displaced others which had previously been used to perform its function, and has gone into immediate and general use, is pregnant and persuasive evidence that it involves invention. Smith v. Vulcanite Co., 93 U. S. 486, 495, 23 L. Ed. 952; Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Manufacturing Co. v. Adams, 151 U. S. 139, 143, 14 Sup. Ct. 295, 38 L. Ed.

103; Magowan v. Packing Co., 141 U. S. 332, 342, 12 Sup. Ct. 71, 35 L. Ed. 781; Graphophone Co. v. Leeds (C. C.) 87 Fed. 873; Topliff v. Topliff, 145 U. S. 156, 164, 12 Sup. Ct. 825, 36 L. Ed. 658. The peculiar combination of devices which distinguishes the brake beam of Hien from all those which went before it; its superior lightness, compactness, simplicity, and adjustability; the presumption of validity accompanying his patent; the fact that his combination had not suggested itself to any mechanic skilled in the art during 12 years of diligent search and effort for improvement; the facility and rapidity with which it took the place of old devices and went into immediate and extensive use as soon as it was disclosed,—all these facts converge upon the mind with compelling force to prove that the striking and effective improvement he made was the production, not of the skill of the mechanic, but of the intuitive genius of the inventor. Thomson v. Bank, 53 Fed. 250, 3 C. C. A. 518, 10 U. S. App. 500; Griswold v. Harker, 62 Fed. 389, 393, 10 C. C. A. 435, 439, 27 U. S. App. 122, 152; Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Consolidated Safety-Valve Co. v. Crosby Steam-Gauge & Valve Co., 113 U. S. 157, 179, 5 Sup. Ct. 513, 28 L. Ed. 939; Magowan v. Packing Co., 141 U. S. 332, 341, 343, 12 Sup. Ct. 71, 35 L. Ed. 781; In re Barbed-Wire Patent, 143 U. S. 275, 281, 283, 12 Sup. Ct. 443, 450, 36 L. Ed. 154. The combination of mechanical devices found in the second claim of the first patent to Hien was novel and useful, and the patent which secured it is valid.

Turning to the first, second, and seventh claims of the second patent to Hien, we are met by the contention of counsel for the appellee that they are anticipated by the combination of his first patent, because the camber or resilience in the beam, which is the only new factor in these claims, may be produced, maintained, and adjusted by simply turning the nuts of the former device. In opposition to this view counsel for the appellants argue that this camber in the beam or the cambered beam of the second patent is a new element, not described or claimed, and not found, in the combination of the first patent, and that its addition to that combination constitutes a new and patentable invention. The argument is ingenious and persuasive, but it is certainly fallacious. The camber or resilience in the beam is one of the products or functions of the brake beam of the first patent; not, indeed, the ultimate function which that beam was created to perform, the function of stopping cars, but nevertheless a function of that device, because it may be produced by the use of that combination by simply turning the nuts upon the ends of its tension rod. Now, the function or result of the operation of a machine or combination is not patentable under our laws, and therefore the camber in the beam could not be monopolized by means of a patent. The means, the mechanical device, by which that camber was produced and that alone, was capable of protection by such a franchise. Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103; Pencil Co. v. Howard, 20 Wall. 498, 507, 22 L. Ed. 410; Miller v. Manufacturing Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38 L. Ed. 121; Knapp v. Morss, 150 U. S. 221, 228, 14 Sup. Ct. 81, 37 L. Ed. 1059; Carver v. Hyde, 16 Pet. 513, 519, 10 L. Ed. 1051; Le Roy v. Tatham, 14 How. 156, 14 L. Ed.

367; Corning v. Burden, 15 How. 252, 14 L. Ed. 683; Burr v. Duryee, 1 Wall. 531, 17 L. Ed. 650. Again, since a function is not patentable, a combination of functions is not; nor is a combination of mechanical devices or elements and one of the functions of that combination. It is a combination of mechanical elements, and of such elements alone, that may be protected by the grant of a patent, and for this reason the combination of the mechanical elements described in the first patent and the camber produced by that combination was not patentable under the acts of congress. Moreover, as is well argued by counsel for the appellee, the scope of the first patent covers and secures to the patentee every use to which its combination can be put, both when the camber in the beam is employed and when it is not employed; and hence it completely anticipates every subsequent claim for a mere combination of the earlier device and a cambered beam or camber in the beam. It is true that Hien did not describe or claim, and it is possible that he was not aware of, the utility of resilience in the beam when he procured his first patent; but the law did not exact of him a statement or claim of the functions or uses of his combination, and those uses and functions were not the subject of patent. He did describe and claim the means by which this resilience in the beam could be produced, maintained, and utilized, and this was all that was required of him by the statutes and the decisions. When this had been done, and a grant of the exclusive use of the combination he had thus claimed had been made to him, he had secured thereby a monopoly of all the uses to which that combination could be applied, whether he was aware of them or not. An inventor is not called upon to state in his specification or claims for a patent all the functions of his device, or all the uses to which his invention may be put. When he has plainly described and claimed his machine or combination, and has secured a patent for it, he has the right to every use to which his device can be applied, and to every way in which it can be utilized to perform its function, whether or not he was aware of all these uses or methods of use when he claimed and secured his monopoly. Roberts v. Ryer, 91 U. S. 150, 157, 23 L. Ed. 267; Miller v. Manufacturing Co., 151 U. S. 186, 201, 14 Sup. Ct. 310, 38 L. Ed. 121; Goshen Sweeper Co. v. Bissell Carpet-Sweeper Co., 72 Fed. 67, 19 C. C. A. 13, 37 U. S. App. 555; Frederick R. Stearns & Co. v. Russell, 85 Fed. 218, 226, 29 C. C. A. 121, 129; Manufacturing Co. v. Neal (C. C.) 90 Fed. 725; Tire Co. v. Lozier, 90 Fed. 732, 744, 33 C. C. A. 255, 268.

A shorter, and perhaps more conclusive, answer to the argument of the appellants here is this question: Could one who took the combination of the first patent and simply tightened the nuts upon it sufficiently to produce resilience in the beam escape a charge of infringement thereof? It is susceptible of but one answer. Yet this tightening of the nuts of the brake beam of the first patent is all that is required to constitute the combination specified in the three claims of the second patent under discussion. The result is that the second claim of the first patent to Hien, No. 361,009, secures to him the exclusive use of the combination there specified, when resilience or camber in the beam is utilized, as well as when it is not. The first, sec-

ond, and seventh claims of.his patent No. 480,194 are anticipated by the second claim of his former patent, and no valid claim could be lawfully granted to Hien for a combination of the device of the earlier patent and a cambered beam, .or camber in the beam, after the issue to him of letters patent No. 361,009.

The next question for discussion is that of infringement. Counsel for the appellee insist that the second claim of the first patent to Hien is so restricted by the prior art, by the proceedings in the patent office, and by the express terms of the claim that it is not infringed by their client's brake beam. The brake beam of the appellee is not the old, cumbrous, double-trussed wooden beam of the patent to Westinghouse, in 1874, with its iron boxes, headed ends of the tension member, and nuts to draw the ends of the wooden beams into their places. It is not the rigid iron beam of Alley, with the ends of the tension member welded to, or made a part of, the compression member. But it is the light, simple, adjustable structure of the appellants, with the same hollow metallic compression member, the same tension member with threaded ends, and the same nuts to secure and adjust the parts. Not only this; but these parts are combined in the exact way pointed out by Hien. The ends of the tension member are passed through slots in the ends of the compression member, and through caps on its ends, and are secured by nuts on the ends of the tension member, which bear on seats on the caps, whose planes are at right angles to the lines of the ends of the tension rod. · There is no difference in the mode of operation, or in the result of the operation, of the two devices. They operate on the same principle and in the same way, and produce the same results. The only difference between them is in the form of the caps and in the devices used to prevent these caps from rotating on the brake beams and brake heads. Can the appellee take the principle of the appellants' combination, the only valuable thing Hien invented, every condition that distinguishes their brake beam from the inferior devices it supplanted, and then escape liability by this slight change of the form of one of its elements? Let us see. Reason has approved, and the decisions of the courts have firmly established, these rules:

One who invents and secures a patent for a machine or combination which first performs a useful function is thereby protected against all machines and combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes or mere colorable evasions thereof. In other words, the term "mechanical equivalent," when applied to the interpretation of a pioneer patent, has a broad and generous signification, while its meaning is very narrow and limited when it conditions the construction of a patent for a slight and almost immaterial improvement. Adams Electric R. Co. v. Lindell R. Co., 77 Fed. 432, 440, 23 C. C. A. 223, 231, 40 U. S. App. 482, 498; Stirrat v. Manufacturing Co., 61 Fed. 980, 981, 10 C. C. A. 216, 217, 27 U. S. App. 13, 42; McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Railway Co.

v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; Brill v. Car Co., 90 Fed. 666, 33 C. C. A. 213, 62 U. S. App. 276. But the great majority of patents falls between these two extremes. They are neither for pioneer inventions nor for improvements so slight as to be almost immaterial. While they do not evidence the first or the last step in the progress of the art to which they relate, they often mark signal advances and protect useful improvements. The doctrine of mechanical equivalents conditions the construction of all these patents, and in determining questions concerning them the breadth of the signification of the term is proportioned in each case to the character of the advance or invention evidenced by the patent under consideration, and is so interpreted by the courts as to protect the inventor against piracy and the public against unauthorized monopoly. Schroeder v. Brammer (C. C.) 98 Fed. 880; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 101 Fed. 716, 721; Bundy Mfg. Co. v. Detroit Time-Register Co., 94 Fed. 524, 36 C. C. A. 375; Miller v. Manufacturing Co., 151 U. S. 186, 207, 14 Sup. Ct. 310, 38 L. Ed. 121; Penfield v. Chambers Bros. Co., 92 Fed. 639, 647, 34 C. C. A. 579, 587; McCormick Harvesting Mach. Co. v. Aultman, Miller & Co., 69 Fed. 371, 16 C. C. A. 259, 37 U. S. App. 299; Muller v. Tool Co., 77 Fed. 621, 630, 23 C. C. A. 357, 366, 47 U. S. App. 189, 204. The doctrine of mechanical equivalents is governed by the same rules and has the same application when the infringement of a patent for a combination is in question as when the issue is over the infringement of a patent for any other invention. Schroeder v. Brammer (C. C.) 98 Fed. 880; Imhaeuser v. Buerk, 101 U. S. 647, 655, 25 L. Ed. 945; Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435, 437, 27 U. S. App. 122, 150; Thomson v. Bank, 53 Fed. 250, 253, 3 C. C. A. 518, 521, 10 U. S. App. 500, 509; Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Gould v. Rees, 15 Wall. 187, 189, 21 L. Ed. 39; Fay v. Cordesman, 109 U. S. 408, 420, 3 Sup. Ct. 236, 27 L. Ed. 979; Water-Meter Co. v. Desper, 101 U. S. 332, 25 L. Ed. 1024; Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601; Machine Co. v. Murphy, 97 U. S. 120, 24 L. Ed. 935; National Cash-Register Co. v. American Cash-Register Co., 53 Fed. 367, 373, 3 C. C. A. 559, 565, 3 U. S. App. 340, 357; Belding Mfg. Co. v. Challenge Corn-Planter Co., 152 U. S. 100, 14 Sup. Ct. 492, 38 L. Ed. 370. Mere changes of the form of a device or of some of the mechanical elements of a combination secured by patent will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention. Watch Co. v. Robbins, 64 Fed. 384, 396, 12 C. C. A. 174, 187, 22 U. S. App. 601, 634; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 Fed. 859.

Let us apply these established principles of the law of patents to the determination of the issue before us. Hien's invention was not a pioneer. This is not a case where one inventor preceded all the rest, struck out something which included and underlay all that they produced, and first supplied a perfect brake beam by means of which great power might be successfully applied to the wheels of railway cars. It is a case in which progress in the art was made step by

step; a case in which many men contributed, not only the skill of mechanics, but the genius of inventors, to the slow, but great, improvement that was wrought; a case in which the steps were not passed in a single leap by one great genius, but one in which each inventor led up a single step. The old, simple, straight wooden beam; the curved iron beam of Marden of 1883; the braced beams of Wellington and of Westinghouse (142,600) in 1873; the double-trussed wooden beam of Westinghouse (149,902) in 1874, with its headed tension member and cumbrous iron boxes, bolts, and nuts; the welded iron-trussed beams of Alley in 1881 and of Westinghouse (345,093), in 1886; and the simple adjustable hollow metallic brake beam of Hien in 1887,—might all be used to stop engines and cars, and each in its turn may have contributed in some degree to the progress of the art. Where the advance towards the desideratum is gradual, and several inventors form different combinations which accomplish the desired result with varying degrees of operative. success, each is entitled to his own combination so long as it differs from those of his competitors and does not include theirs. Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930; Stirrat v. Manufacturing Co., 61 Fed. 980, 981, 10 C. C. A. 216, 217, 27 U. S. App. 13, 42; Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435, 438, 27 U. S. App. 122, 150; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 440, 23 C. C. A. 223, 231, 40 U. S. App. 482, 498. Alley in 1881, Marden in 1883, Westinghouse in 1873, 1874, and 1886, and Hien in 1887, devised combinations which would undoubtedly stop the wheels of cars with varying degrees of success. Each differed in some respects from all the others, and each was entitled to his own combination and to its just mechanical equivalents. The brake beam of Hien proved to be the most efficient and successful. It went into more extensive use than any which preceded or competed with it. Its principle, its mode of operation, the conditions which distinguish it from all others, are the combination of a tension member with threaded nuts which extend through the ends of the hollow metallic compression member, through caps on the ends of the latter, and through nuts, with the compression member, the caps and the nuts, so that the turning of the latter may produce, maintain, and adjust the rigidity of the structure, the resilience of the beam, and the coning of the faces of the brake shoes to the tread of the wheels. This structure is not the mechanical equivalent of any brake beam which preceded it, because none of them contains these conditions; no one of them has the combination of these elements in this way; no one of them has the ends of its tension member passing through the ends of its compression member, and through caps and nuts, so that the mere turning of the latter may lock the parts together and may produce, maintain, and adjust their relation and action. And here is the measure of the restriction of the meaning of the term "mechanical equivalent" by the prior art, and the key to the true interpretation of that term in its application to the invention secured by the first patent to Hien. Every structure and combination which adopts the principle, the conditions which distinguish this combination from those which preceded it, every brake

beam which combines the tension member and its threaded ends with the hollow metallic compression member, the caps, and the nuts, so that the ends of the tension member pass through the ends of the hollow metallic compression member, through the caps and the nuts, and so that the mere turning of the latter may lock the parts and may produce, maintain, and adjust the rigidity of the structure, the resilience of the beam, and the coning of the shoes to the tread of the wheels, is the mechanical equivalent of the combination of this patent, and an infringement of the franchise it grants. The appellee has adopted this principle, which no device in the prior art disclosed, and its brake beam is therefore a mechanical equivalent of that of the appellants, while those preceding it are not. The prior art, therefore, did not so restrict the second claim of the patent No. 361,009, nor so limit the meaning of the term "mechanical equivalent" in its application to the invention it specified, as to exempt one who, like the appellee, has appropriated the distinguishing characteristics of the combination, from liability to answer for his infringement.

But it is contended that the appellee has escaped on account of limitations imposed upon the patentee by the proceedings in the patent office anterior to the issue of the patent. When Hien originally filed his application he made the claim now under consideration in the following words:

"(3) The combination with a hollow metallic brake beam of a truss rod and end caps, substantially as and for the purposes specified."

The patent to Westinghouse, No. 142,600, which discloses in the place of the tension rod the two braces bearing on the brake shoe at one end, and upon each other or upon an interposed block at the other, and two tie rods extending through the brake head and secured in their places by upset heads, instead of the hollow metallic compression member, and the patents to Hedrick for the brake shoe, to Eddy for the whiffletree, and to Westinghouse, No. 345,093, for the iron brake beam with the ends of the tension member welded to the compression member, were cited by the examiner, and this claim was rejected. Thereupon the applicant amended his claim, so that it read:

"(2) The combination, in a brake beam, of a hollow beam, a strut, end plugs or caps, 8, and a truss rod, 3, which extends through the caps, 8, and is provided with nuts, substantially as and for the purposes specified."

The position of counsel for the appellee is that Hien's acquiescence in this rejection and his amendment of his claim limit the franchise he secured to the exact form of the caps, 8, disclosed by the specification and drawing of his patent. But it was neither the caps, 8, nor the form of those caps, that Hien was seeking to secure. The principle of his invention did not inhere in these specific caps, in their shape, or in the devices by which they were united with the brake head and the brake beam. It resided in the combination, in the new way by which tension rod, hollow metallic compression member, caps, and nuts were blended in the new brake beam. Bearing this in mind, what was the legal effect of the rejection of the original claim and Hien's acquiescence therein? The original claim covered the combination of a hollow metallic brake beam, a truss rod, and end caps;

but it failed to state that it was limited to their combination by passing the ends of the tension rod through the ends of the compression rod and the caps, and securing them by nuts. The examiner thought that it covered the devices described in the patents he cited, and for this reason he rejected it. Hien acquiesced, and inserted the limitation. It is true that if a patentee acquiesces in the rejection of his claim on references cited in the patent office, and accepts a patent on an amended claim, he is thereby estopped from maintaining that the amended claim covers the combinations shown in the references, and from claiming that it has the breadth of the claim that was rejected. Roemer v. Peddie, 132 U. S. 313, 317, 10 Sup. Ct. 98, 33 L. Ed. 382; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 429, 14 Sup. Ct. 627, 38 L. Ed. 500; Brill v. Car Co., 90 Fed. 666, 668, 33 C. C. A. 213, 215, 62 U. S. App. 276, 282; Railroad Co. v. Kearney, 158 U. S. 461, 469, 15 Sup. Ct. 871, 39 L. Ed. 1055; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; Crawford v. Heysinger, 123 U. S. 589, 8 Sup. Ct. 399, 31 L. Ed. 269. But this is the limit of the estoppel. One who acquiesces in the rejection of his claim because it is said to be anticipated by other patents or references is not thereby estopped from claiming and securing by an amended claim every known and useful improvement which he has invented that is not disclosed by those references. The only limitation, therefore, imposed upon the second claim of the patent to Hien by the rejection of the original claim, was that he was thereby estopped from maintaining that it covered the devices disclosed in the references cited by the examiner, which the latter believed were within the limits of the claim first presented. In an earlier part of this opinion each of these references has been carefully considered, and has been found to be without the limits of the amended claim, and yet that claim has been found to be broad enough to protect the principle and the combination which the appellee has copied. The proceedings in the patent office, therefore, have not so restricted the scope of this patent that the appellee can appropriate the principle and the combination it discloses and secures, and then escape liability by an immaterial change in the form of one of its elements.

Finally, it is said that the patent is limited to the precise geometrical form of end caps shown in the specification and drawings, by the fact that the figure "8" appears after the words "end caps" in the claim. There are cases wherein the form of a device is the principle of the invention. There are other cases wherein the state of the prior art and the specific terms of the specification and drawings leave no doubt of the intention of the applicant to restrict his claim to the specific form of the device or element he points out. In such cases claims of patents are sometimes limited to the specific forms of the devices pointed out by letters or numbers in the claims or specifications. Weir v. Morden, 125 U. S. 98, 107, 8 Sup. Ct. 869, 31 L. Ed. 645; Railroad Co. v. Kearney, 158 U. S. 461, 469, 15 Sup. Ct. 871; 39 L. Ed. 1055; Crawford v. Heysinger, 123 U. S. 589, 8 Sup. Ct. 399, 31 L. Ed. 269; McCormick Harvesting Mach. Co. v. Aultman, Miller & Co. (C. C.) 58 Fed. 773; Newton v. Manufacturing Co., 119 U. S. 373, 7 Sup. Ct. 369, 30 L. Ed. 442; Bragg v. Fitch, 121 U. S. 478, 7 Sup.

Ct. 978, 30 L. Ed. 1008; Dryfoos v. Wiese, 124 U. S. 32, 8 Sup. Ct. 354, 31 L. Ed. 362; Hendy v. Iron Works, 127 U. S. 370, 375, 8 Sup. Ct. 1275, 32 L. Ed. 207. But this is not a case of that character. The form of the caps and the specific mechanical devices by which they should be locked with the brake head and brake beam were immaterial to the principle of this invention. Caps of many forms, many obvious mechanical devices for fastening them to the compression member, the brake heads, and the brake beams, and preventing these elements from rotating upon each other, would perform the same function in the combination of the patentee as those which he pointed out. The specification, the drawing, and the claim show that the patentee was not ignorant of this fact, nor of the law by which this patent must be interpreted. He never claimed the form of his caps as a part of his invention. He never described in his specification or drawing, as an essential part of his invention or of the caps themselves, those peculiarities in the caps by the omission of which the appellee seeks to escape infringement. These peculiarities are (1) depressed nut seats, for which the appellee has substituted raised nut seats; (2) circular shoulders, which permit the caps to enter the ends of the compression member a short distance and prevent their further entry; and (3) lugs on the caps, extending into the slots of the compression member and into notches in the brake heads, to prevent these parts from rotating upon each other, in place of which the appellee has substituted lugs on the brake heads, extending into the slots in the compression member, and shoulders on the peripheries of its caps, which engage with corresponding irregularities on the brake heads and thereby prevent the rotation of the parts upon each other. The only mention made of the depressed nut seats in the specification is in these words, "Which may have recesses or nut seats, 9, for the nuts on the ends of the truss rod, 3," which are used in describing the caps. The circular shoulders and lugs are not mentioned in the specification, and they appear only in the drawing. There is nothing in the terms of this patent or in the circumstances surrounding its issue which require a departure from the general rules of interpretation which govern the construction of such grants.

The description in a specification or drawing of details which are not, and are not claimed as, essential elements of a combination, is the mere pointing out of the better method of using the invention. City of Boston v. Allen, 91 Fed. 248, 249, 33 C. C. A. 485, 486. A reference in a claim to a letter or figure used in the drawing and in the specification to describe a device or an element of a combination does not limit the claim to the specific form of that element there shown, unless that particular form was essential to, or embodied the principle of, the improvement claimed. Sprinkler Co. v. Koehler, 82 Fed. 428, 431, 27 C. C. A. 200, 203, 54 U. S. App. 267, 272; McCormick Harvesting Mach. Co. v. Aultman, Miller & Co., 69 Fed. 371, 393, 16 C. C. A. 259, 281, 37 U. S. App. 299, 313; Muller v. Tool Co., 77 Fed. 621, 23 C. C. A. 357, 47 U. S. App. 189; Delemater v. Heath, 58 Fed. 414, 424, 7 C. C. A. 279, 284, 20 U. S. App. 14, 30; Reed v. Chase (C. C.) 25 Fed. 94, 100; Walk. Pat. (3d Ed.) § 117a. That interpretation which sustains and vitalizes the grant should be preferred to that

which strikes down and paralyzes it. Reece Button-Hole Mach. Co., v. Globe Button-Hole Mach. Co., 61 Fed. 958, 962, 10 C. C. A. 194, 198, 21 U. S. App. 244, 363; Consolidated Fastener Co. v. Columbian Fastener Co. (C. C.) 79 Fed. 795, 798; American Street-Car Advertising Co. v. Newton St. Ry. Co. (C. C.) 82 Fed. 732, 736; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 101 Fed. 716, 722. One who appropriates a new and valuable patented combination cannot escape infringement by uniting or operating its elements by means of common mechanical devices which differ from those which are pointed out for that purpose, but which are not claimed in the patent. Deering v. Harvester Works, 155 U. S. 286, 302, 15 Sup. Ct. 118, 39 L. Ed. 153; City of Boston v. Allen, 91 Fed. 248, 249, 33 C. C. A. 485, 486; Schroeder v. Brammer (C. C.) 98 Fed. 880. The application of these principles to the case at bar compels the conclusion that this grant was not limited to the exact geometrical form of the caps shown in the drawing which accompanies it, nor to the specific devices there pointed out for the purpose of fastening the elements of the combination it protects to each other, and leaves no avenue of escape from the conclusion that the appellee is guilty of an infringement of the second claim of the patent. The variation in the form of the caps which the appellee has introduced constitutes no improvement on the patented combination, is an immaterial change in obvious mechanical devices that were neither essential to nor claimed by the patentee, and served only to point unerringly to the reason of its being. The appellee's brake beam still has every element and every attribute of Hien's combination. It was made for the same purpose, and it accomplished the same result by the same means. It has the hollow metallic compression member, the strut, the caps, the tension member with threaded ends extending through the ends of the compression member and through the caps, all locked in place by the nuts on the ends of the tension rod, by the mere turning of which the rigidity of the structure, the resilience of the beam, and the coning of the brake shoes to the tread of the wheels may be produced, maintained, and adjusted. It has the strength, lightness, simplicity, compactness, adjustability, and efficiency of Hien's invention. It retards and stops the wheels of moving cars by the same means and in the same way. It has that peculiar combination of devices which distinguishes the patented brake beam of the appellants from all those which preceded it, and it constitutes a clear infringement of their franchise.

This concludes the discussion of the cardinal claims which protect the brake beam of the appellants. The defense to these claims came to this court sustained by letters patent No. 609,396, issued to Francis B. Aglar, on August 23, 1898, and by the established rule that where the chancellor has considered conflicting evidence, and made his finding and conclusion thereon, they must be taken to be presumptively correct, and unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the case, the findings and decree should not be disturbed. Mann v. Bank, 86 Fed. 51, 53, 29 C. C. A. 547, 549, 57 U. S. App. 634, 637; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664;

Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649; Warren v. Burt, 58 Fed. 101, 106, 7 C. C. A. 105, 110, 12 U. S. App. 591, 600; Plow Co. v. Carson, 72 Fed. 387, 388, 18 C. C. A. 606, 607, 36 U. S. App. 448, 456; Trust Co. v. McClure, 78 Fed. 209, 210, 24 C. C. A. 64, 65, 49 U. S. App. 43, 46; Exploration Co. v. Adams (C. C. A.) 104 Fed. 404, 408. In the consideration and decision of the issues of law and fact here involved, these presumptions have neither been overlooked nor disregarded. But the state of the art of constructing brake beams in 1887, when the first patent to Hien was issued, the proceedings in the patent office, the terms of the patent, the peculiar combination of devices it secures, the obvious value and usefulness of the invention, and the plain appropriation of it by the appellee, have swept these presumptions away, and forced our minds inexorably to the conclusion that no mechanical equivalent of the combination of Hien's first patent is found in the prior art, and that the appellee's brake beam is such an equivalent. A careful review of the entire case leaves us without doubt of the correctness of this result; and even if the belief of the appellee that the double-trussed wooden beam of the patent to Westinghouse in 1874, or the double-trussed wooden beam of later date, and the welded iron beams of Alley and of Westinghouse, are the mechanical equivalents of Hien's first brake beam, were well founded, no grave injustice could result from our conclusion, because the appellee will still be free to adopt and use any or all of these devices, and to prove its faith by its works. We turn to the consideration of the less important claims involved in these suits.

The appellants insist that all the remaining claims of the second patent to Hien have been infringed by the use of the brake beam of the appellee. These claims are:

"(3) The combination, with a trussed tubular brake beam having a slot for the passage of the truss rod and a notch for the reception of a lug on the brake head, of a brake head having a cupped recess for the reception of the end of the beam and provided with a lug adapted to enter the recess in the end of the beam, as set forth.

"(4) The combination, with a tubular beam notched at its end, of a brake head having a cupped recess or socket, with a lug corresponding to the notch in the end of the tubular beam, as set forth.

"(5) A trussed hollow or tubular brake beam having a camber, and having one or more notches at its ends, in combination with brake heads having cup-shaped recesses, inclined bearings, and one or more projections, and the truss rod passing through and holding said heads in position.

"(6) A trussed hollow or tubular brake beam having a camber, in combination with brake heads having cup-shaped recesses, a truss rod passing through and holding said heads in position, and the inclined bearings for supporting the nuts on the end of the truss rod."

"(8) In a trussed brake beam, the combination, with a cambered compression member, of brake heads having cup-shaped recesses for the reception of the ends of the cambered compression member and a tension rod, substantially as and for the purposes specified."

The cardinal principle of the appellants' brake beam, and an operative combination by which that principle could be utilized, were described and secured by the first patent to Hien. These claims of the second patent adopt that combination as their foundation, and seek

to protect new combinations by the addition of slight improvements in the mechanical construction of the old device. Hien's first patent left nothing to be secured by these claims but slight and almost immaterial improvements in these minor details, and for that reason the claims of this second patent are limited to the exact devices they disclose or mere colorable evasions thereof. The addition of the camber or of the cambered beam to the earlier combination, as we have seen, gave no patentable novelty to the devices described in the later patent, and the only characteristics they present which distinguish them in any way from the combination of patent No. 361,009 are these: In the combinations mentioned in all these five claims the cap and the brake head are made in one piece with a cup-shaped recess, and this brake head with a cup-shaped recess is substituted for the cap and brake head of the earlier combination. In the third, fourth, and fifth claims the additional element of a lug or lugs on the brake head and a notch or notches in the end of the compression member to receive these lugs, for. the purpose of preventing the rotation of the brake head upon the beam, may be found. Conceding, but not deciding, that these claims may be sustained on account of these slight changes in the mechanical construction of the device of the earlier patent, they must be limited to the very contrivances they specify. The brake head with a cup-shaped recess—that is to say, the brake head and cap in one piece, having the cup-shaped recess, instead of the brake head and cap in two pieces, as shown in Hien's earlier patent—is an essential element of the combination described in each of these claims, and this element is absent from the brake beam of the appellee. The appellee has used the mechanical equivalent of the cap of Hien's earlier patent, but it has not adopted the cup-shaped brake head of his later patent. Moreover, its brake beam lacks the specific lugs and notches described in claims 3, 4, and 5 of patent No. 480,194, and for these reasons its use is not an infringement of any of the five claims of this patent under consideration. The absence from a device that is alleged to infringe a patented combination of a single element of that combination is fatal to the claim of infringement. Adams Electric R. Co. v. Lindell R. Co., 77 Fed. 432, 451, 23 C. C. A. 223, 242, 40 U. S. App. 482, 515.

For the same reason the appellee is not guilty of infringement of claims 1 and 2 of letters patent No. 466,984, issued to Henry B. Robischung on January 12, 1892, nor of claim 5 of letters patent No. 486,218, issued to him on November 15, 1892, which read in this way:

"(1) In a cambered trussed brake beam, the combination, with compression member and the strut or post, of an interposed key or wedge, substantially as and for the purposes specified.

"(2) In a cambered trussed brake beam, the combination, with the compression member, of a strut or post having a collar for the compression member, said collar provided with key slots, and a key or wedge, substantially as and for the purposes specified."

"(5) In a trussed cambered brake beam, the combination, with a cambered compression member, a tension member, a brake head, and a nut for maintaining the camber, of an interposed locking device for preventing any alteration in the camber of the beam, substantially as and for the purposes specified."

The only difference between the device shown and claimed in the first two claims of patent No. 466,984 and that of the first patent to Hien is the addition to the latter structure of a key or wedge in the first of these claims, and of a key or wedge and key slots in the collar to receive the wedge in the second claim. In the specification and drawing of this patent the applicant points out as the preferable construction a curved wedge driven, transversely to the compression member, into slots in the collar of the strut on the concave side of the cambered beam, as illustrated by this cut:

The purpose of this wedge is to take up the slack between the collar and the compression member which results from bending the beam, and to prevent a twisting or torsional action of the compression member which is caused by this slack, and which sometimes produces a cross bending or buckling of the beam, and always results in lost motion in machines of this character. The appellee has not adopted this curved key or these slots in the collar of the strut, but it uses a straight wedge driven longitudinally along the concave side of the compression member, between it and the collar of the strut, to accomplish the purpose of Robischung's device. Neither the intuition of the inventor nor the skill of the mechanic is required to suggest the fitness of a wedge to take up slack, to prevent lost motion in, or to tighten the loose members of, a mechanical device. Its fitness for these purposes is common knowledge, and has been taught by the common experience of mankind. The argument of counsel for the appellants is, however, that this is not a patent for a wedge, but for the new combination of a wedge with the brake beam of Hien. But it is a conclusive answer to this contention that there is no more invention in the combination of a wedge of the usual form, discharging its customary function of tightening the parts of a mechanical device, with Hien's machine, than there is in the discovery of the wedge itself and its common use for this purpose. If this were not true, every combination of an old machine with a wedge, performing the function of tightening its parts, would constitute an invention. In this way it clearly appears that, if either of the two claims of this first patent to Robischung is for the combination of a common wedge, like that used by the appellee, with the brake beam of Hien, in the customary way in which the appellee has used it to take up the slack in the device or to tighten the parts of the brake beam, there is no

invention in conceiving that combination. If, therefore, either of the combinations specified in these claims was patentable at all, it was because it united the new element of a curved wedge driven across the concave side of the compression member, through the slots in the collar of the strut, with the old combination of Hien; and, since the appellee does not use this new element, it is not guilty of infringement of these claims, and there was no error in the conclusion of the court below upon this issue.

The new element in the combination specified in claim 5 of the second patent to Robischung was the "interposed locking device for preventing any alteration in the camber of the beam." The purpose of this contrivance was, not to lock the nuts, but to detect any change in the camber of the beams made by unauthorized employés of the railroad companies by turning the nuts on the tension member for the purpose of taking up slack in the system of brake levers. Unauthorized changes of this character were liable to impair the utility and to destroy the efficiency of the brake beams, and the patentee was seeking an artifice that would detect any tampering with the nuts and any change in the camber of the beams. He accomplished his object by interposing between the nut-seat and the nut on the end of the tension member a frangible locking plate or disc with a lip which, the patentee says in his specification, "having once been turned up into position to hold the nut, b, cannot thereafter be removed and replaced without destroying the utility of the locking device." This frangibility, this certainty that the lip of the locking plate cannot be removed and replaced after it is once turned up over the nut, is the essence, the principle, of this invention; and the issue here is whether or not the appellee has adopted it. The latter uses a locking plate whose lips are adapted to turn up over the nut and to lock it in place in substantially the same way as does the lip on the disc of the patentee. But it is contended that the plate of the appellee is made of tough or pliable material, so that the lips cannot be broken or the utility of the locking device destroyed by removing and replacing them, but that they may be turned up over the nut, rolled back, and turned up again several times without separating them from the plate. The evidence upon this question is conflicting. On the one hand, there is a brake beam of the appellee from which the lips of its locking plate have been broken, and there is the fact that no locking device is necessary to hold the nuts on the tension rod of a cambered brake beam; while, on the other hand, the testimony of two witnesses is presented to the effect that the discs of the appellee are made of material so tough and pliable that they withstand several removals and replacings without breaking. The court below, after a careful examination of this conflicting evidence, found that the appellee's device was not made of frangible material, that it was therefore not adapted for use as a detector, that it lacked the essential principle of Robischung's invention, and that it did not constitute an infringement of the fifth claim of his second patent. This finding and the decree which followed it are presumptively correct, and under the established rule they should not be disturbed, unless it appears from the evidence with reasonable certainty that they are

the result of a serious mistake in the consideration and decision of the question of fact which conditions them. The evidence of the infringement of this device is too weak, uncertain, and conflicting to convince of any mistake in the finding and conclusion of the court below, or to warrant a reversal of its decree upon this claim, and for that reason its conclusion must be sustained.

Letters patent No. 345,093 disclose the facts that they were issued to George Westinghouse, Jr., on July 6, 1886, upon an application which he made on May 18, 1886. The only claim of this patent here in suit is the sixth, which reads as follows:

"(6) In a brake beam, the combination, substantially as set forth, of a tie bar, a double inclined truss bar, and an interposed king post or strut, having a slot for the reception of a brake lever between the tie bar and the truss bar."

The new element in the combination of this claim, which the appellants contend distinguishes it from those shown in the prior history of the art, is the slot in the strut between the tie bar and the truss bar for the reception of the brake lever. Counsel for the appellee deny this contention of the appellants, and insist that this claim was anticipated by the patent to Wellington, No. 145,605, dated December 16, 1873, and the patent to Westinghouse, No. 243,416, issued June 28, 1881, and that the patentee Westinghouse abandoned this device to the public, and placed brake beams, which contained this slot in the strut and embodied the principle of this claim, on sale more than two years before he applied for this patent. The Car-Builders' Dictionary of 1879 contains, at page 448, an illustration which shows the patentee's iron brake beam, with this slot in the strut between the tie rod and the truss rod for the purpose of receiving a brake lever, in the same way in which it is claimed in this patent, issued seven years later. A circular of the Westinghouse Air-Brake Company, which one of the witnesses testified had been among his files since the year 1882, was produced, and this witness said that one of the plates of this circular pictured this slot in the strut of this iron brake beam of the patentee. Two witnesses testify that the Chicago, Burlington & Quincy Railway Company used in 1884 Westinghouse iron brake beams which contained these slots in their struts between the truss rods and the tie rods for the reception of the brake levers. A voucher of the Chicago, Burlington & Quincy Railway Company, dated in April, 1884, for the purchase by it from the Westinghouse Air-Brake Company of 98 iron brake beams, was introduced in evidence, and the parties to these suits stipulated that the "book of material received" of that railway company for the year 1884 contained the following entry:

"April 17, 1884.
Car No. 10,465.
Who from—Westinghouse A. B. Co.
Invoice date—4/10.
Material—98 iron brake beams.
Freight charges—$12.86.
Price—600."

—And that the two witnesses who had before testified to the use of brake beams with slots in the struts on that railroad in that year

106 F.—46

would, if recalled, testify that the 98 iron brake beams referred to in this voucher and in this storehouse record were the same beams, and that they contained the slots in the struts between the tie rods and the truss rods for the reception of the brake levers in exactly the same form as that claimed in this patent. There is nothing in the record in this case which contradicts or impeaches this evidence, and it convinces beyond a reasonable doubt that more than two years before George Westinghouse, Jr., applied for this patent he had abandoned to the public the slot in the strut of his brake beam between the tie rod and the truss rod, and had advertised and placed on sale iron brake beams which contained this specific element, and these brake beams had gone into public use. Rev. St. § 4886. For this reason, and also because we are not convinced that the court below was in error in its conclusion that the combination here disclosed was anticipated by the prior patents to which reference has been made, the patentability of the combination specified in the sixth claim of this patent No. 345,093 cannot be sustained. Manufacturing Co. v. Mellon, 58 Fed. 705, 7 C. C. A. 439, 19 U. S. App. 239; Craig v. Lumber Co. (C. C.) 72 Fed. 173.

The last subject for discussion in these suits is the second claim of letters patent No. 430,755, issued to Henry B. Robischung on June 24, 1890. It reads:

"(2) A clamp or yoke, having flanges provided, at or near their extremities, with inwardly projecting lugs, which limit the closing of the flanges, substantially as and for the purposes specified."

This contrivance depends for its novelty and patentability solely upon the inwardly projecting lugs on the ends of the flanges of the clamp, which limit their closing. It is not claimed that there was any invention in devising or combining the other elements of this device. The function of the clamp is to attach the brake beam to the safety chain. The following cut is an illustration of it:

In operation the lower cylindrical portion of this yoke incloses or clamps the brake beam, while the flanges and the bolt, 5, hold the safety chain. The bolt, 5, and the nut, 6, upon its end, draw the flanges of the clamp towards each other, until the beam is held fast by the clamp. This clamp, with its bolt and nut, was an old device, and the new thing which Robischung did, and which he claimed as

his invention here, was to interpose the lugs, 3, upon the ends of the flanges, to prevent them from approaching each other too closely. The evil he sought to remedy he stated in his specification in this way:

"Where the usual clamp and bolt are used to connect the safety chain with the beam, the tendency of the bolt is to cause the clamp to bind on or rigidly hold the safety chain, and the tendency of the chain is to loosen the bolt."

He described the object he sought to attain in these words:

"A second feature consists in providing said clamp with lugs, or projections, which are so placed as to limit or restrict the closing of the clamp, to p e-vent its binding on the safety chain, and at the same time to increase the grip of the clamp on the beam."

The contention of counsel for the appellants is that these lugs have two functions,—the creation, in combination with the bolt, of a spring grip in the clamp, and the prevention of the binding of the safety chain between the flanges. Let this be conceded. Still the means by which these objects are attained is a simple device to limit the closing of the flanges. The desideratum, and the only desideratum, which Robischung needed, the only one he sought or found, was this obvious contrivance to prevent the flanges or jaws of this yoke from closing too tightly. There are some mechanical devices so obvious and appropriate for the performance of their accustomed functions that the common knowledge and experience of those unskilled in mechanics, to say nothing of those learned in the art, at once suggests their use when the results which they customarily attain are desired. Projections or lugs on approaching jaws or flanges, for the purpose of limiting their closing, are surely among these contrivances. The moment the want of this limitation is felt, projections on the jaws or flanges naturally occur to those unskilled, as well as to those skilled, in the art, as the most obvious and appropriate means to fill the want. There can be neither discovery nor invention in applying a remedy so plain to, or in combining a contrivance so obvious with, an old mechanical device which needs it. There was, therefore, no invention in interposing the inwardly projecting lugs between the flanges of this clamp, or in combining them with the old elements of that device, to limit the closing of the flanges, in order that they might not bind the chain, and that the yoke and bolt might grip the beam with a spring clamp; and for this reason the second claim of patent No. 430,755 is void for want of patentable novelty. Hollister v. Manufacturing Co., 113 U. S. 59, 72, 73, 5 Sup. Ct. 717, 28 L. Ed. 901; Manufacturing Co. v. Mellon, 58 Fed. 705, 7 C. C. A. 439, 19 U. S. App. 239.

The discussion of the numerous issues presented in these suits is now completed. In accordance with the conclusions which have already been announced, the decree in Chicago Railway-Equipment Company v. Interchangeable Brake-Beam Company must be affirmed, and the decree in National Hollow Brake-Beam Company and Chicago Railway-Equipment Company v. Interchangeable Brake-Beam Company must be reversed, and that suit must be remanded to the court below, with directions to enter a decree in favor of the appellants and against the Interchangeable Brake-Beam Company for an infringement of the second claim of letters patent No. 361,009, and

for the usual injunction and accounting, and to take such further proceedings in that suit as shall not be inconsistent with the views expressed in this opinion; and it is so ordered.