ADAMS CO. et al. v. SCHREIBER & CONCHAR MFG. CO.

(Circuit Court, N. D. Iowa, E. D.    September 30, 1901.)

1. PATENTS—INFRINGEMENT—EQUIVALENT PARTS.
    A mere change in the form of an element or part of a patented device,
    where it performs the same function in substantially the same manner,
    does not avoid infringement.

2. SAME—INFRINGEMENT—MECHANICAL EQUIVALENTS.
    The doctrine of mechanical equivalents conditions the construction of
    all patents, only in different degrees, depending upon the advance made
    in the art by the invention of the patent; and a patent for an article
    of improved construction, having elements of novelty and usefulness,
    though within narrow limits, protects the inventor against the appropria-
    tion by another of the substance of his improvement by the substitution
    of devices which are known equivalents, and perform precisely the same
    function.

3. SAME.
    The mere strengthening of a part in a patented device to give it longer
    life, where it does not improve or change the device in operation, does
    not constitute invention, nor differentiate the new device from the old
    to avoid infringement.

4. SAME—ADJUSTABLE STOVE DAMPERS.
    The Farwell patent, No. 493,548, for an adjustable stove damper, claim
    2, construed, and held infringed.

In Equity.    Suit for infringement of patent.    On final hearing.

M. M. Cady, Alphonse Matthews, and L. L. Bond, for complain-
ants.

Henderson, Hurd, Lenehan & Kiesel and Church & Church, for
defendant.

SHIRAS, District Judge.    This case involves the construction of
the second claim of letters patent No. 493,548, dated March 14,
1893, issued to Fay O. Farwell, as the inventor, one-half interest
therein having been assigned to the Adams Company, of Dubuque,
Iowa.    In the specifications of the letters patent the object of the
invention is stated to be "to provide a damper to be used in repair-
ing broken or worn-out dampers in stoves (more particularly cook-
ing stoves), which shall be easily and readily placed in the stove,
without taking the stove apart, and which shall be adjustable to
stoves of different sizes and of different makes or patterns, requiring
handles of different lengths."    It appears from the evidence that
for some years prior to the issuance of this patent the Adams Com-
pany had been engaged in the manufacture and sale, among other
articles, of stove repairs, including dampers, and had in its employ
Fay O. Farwell, co-complainant in this case.    The greater portion
of the dampers manufactured prior to 1893 was of the kind or style
known as the "Newby damper," described in letters patent No. 246,-
808, issued to A. S. Newby under date of September 6, 1881.    Damp-
ers of this make, however, could not be adjusted to stoves of different
sizes and styles without procuring a rod of the proper length, as the
blade of the damper could not be moved along the rod for any dis-
tance without disengaging the rod from the lugs of the blade, and
thus destroying the connection between the rod and the blade.    Hav-

ing learned from his practical experience in the business that neither
the Newby damper nor any other style then known to the trade fairly
met the requirements of an adjustable stove damper so constructed
as to be usable in the repair of the different makes of stoves in com-
mon use, Farwell undertook the task of devising an adjustable
damper that should, as nearly as possible, meet this want.    The facts
of the situation were that in the community were to be found stoves
of many different patterns, differing in the size of the flue opening,
differing in the position of the flues (which might be in the center
or upon either side thereof), and differing in the position of the oven
doors.    The problem presented for solution was the devising of a
stove damper adaptable to the different sizes of flues and adjustable
to the variant positions of the flues and of the oven doors, which
could be readily put in place in the stove needing repair without
the aid of a skilled mechanic.    The solution reached by Farwell was
the combination described in letters patent No. 493,548, the ele-
ments of which are the blade, or that portion of the damper intended
to cover the flue opening when the damper is closed, the rod by
means of which the blade is operated, and the means of attachment
between the rod and the blade, comprising lugs upon the blade
through which the rod passes, and a screw for confining the blade to
the proper position upon the rod.    The rod is made with two grooves,
one on each side, extending nearly the entire length of the rod.    The
blade has reversely curved lugs in opposition upon its lower edge
through which the rod is passed, and thus a means is provided for
slipping the blade along the rod until it is properly placed in front of
the flue opening, where it can be securely fastened by means of the
screw or bolt passing through the blade with a nut thereon.    In this
combination, as the rod is not permanently fastened to the blade, it
can be inserted in the lugs from either side of the blade, and thus
the handle or projecting part of the rod can be so placed on the side
of the stove as to avoid interference between the handle of the
damper and the oven door.    The Adams Company entered upon the
manufacture of dampers of the Farwell type under the name of the
"Diamond Adjustable Cook Stove Damper," and the large sales made
thereof show that it has proved an acceptable article, well fitted for
the purpose for which it is intended.    Under date of April 18, 1899,
letters patent No. 623,417 were issued to Anton Ohnermus and Henry
Sanner for an improvement in stove dampers, and the defendant,
the Schreiber Conchar Manufacturing Company of Dubuque, com-
menced the manufacture and sale of dampers in accordance with
the specifications of this patent, and thereupon the complainants,
claiming that the damper manufactured by the defendant was an
infringement of the rights secured to them by the second claim of
the Farwell patent, brought this suit to enjoin such infringement
and for an accounting, and the case has been submitted on the plead-
ings and proofs.    Upon the argument before the court and in the
brief filed on behalf of defendant it is stated that the issue is nar-
rowed down to the question of infringement, the position taken
being that, in view of the prior state of the art, the patent of com-
plainants must be limited to a particular form, and cannot be con-

strued so as to include the peculiar form found in the damper manu·
factured by the defendant company.

The second claim of the Farwell patent reads as follows:

"A stove damper, comprising a rod having two grooves in it, one on each
side thereof, extending nearly its entire length, and a blade formed with·
lugs on its opposite sides, said lugs being fitted loosely in the grooves or
flutes, and adjustable with the blade in said grooves to any point desired,
so as to adapt the dampers to stoves requiring different lengths of handles,
and a screw for confining the blade to its adjusted position, substantially
as described."

In the damper manufactured by the defendant company is found
a blade with lugs on its opposite sides, intended to receive the rod
from either end of the blade, and a rod so formed that the blade
can be slipped along the same to any desired position, with a screw
passing through the blade, one purpose of which is to fasten and
hold in position the blade upon the rod. Substantially, therefore,
all the elements of the combination described in the second claim of
the Farwell patent are found in the damper manufactured by the
defendant company; but it is claimed that the forms of these ele-
ments have been so modified or changed that the charge of infringe-
ment cannot be sustained. The evidence shows, and it is so admit-
ted in the brief of counsel for defendant, that the damper made by
the defendant company is intended to accomplish the same purpose
as the damper manufactured by the complainants, and therefore
the question is whether there are to be found in the component parts
of these dampers, to wit, the blade, the stem or rod, and the means
of attaching or fastening the blade in the desired position upon the
rod, such differences as will serve to differentiate the one combina-
tion from the other. The blades of each manufacture are alike in
general form, the only difference being that in complainants' dam-
per the lugs intended to receive the rod are an integral part of the
blade as cast, whereas in the defendant's damper three of the lugs
are cast with the blade, and one is cast with a separate piece, which
is fastened with a screw to the blade when the damper is put in
operative condition. So far as these lugs are to be deemed to be
parts of the blade and as parts of the combination for receiving the
rod, their position and mode of operation are indentical with the lugs
of the Farwell damper, and the mere fact that in defendant's dam-
per the one lug is cast upon a separate plate, intended, however, to
be fastened to the blade, does not constitute any material difference
in the form or mode of operation of the blade. It may be further
said that, although the Adams Company in fact cast the blade with
the opposing lugs as integral parts thereof, there is nothing in the
patent limiting the combination in this particular. All that is called
for is a blade formed with lugs on opposite sides, and this form may
be given to the blade by following the method adopted by the com-
plainants or by following that adopted by the defendant, and both
forms will meet the requirements of the Farwell patent. Coming
to the rods as parts of the combination in the second claim of the
Farwell patent we find the rod described to be "a rod having two
grooves in it, one on each side thereof, extending nearly its entire

length"; whereas in the rod found in defendant's damper the rod is wider on the side next the blade, and the sides are inclined without perceptible grooves cut thereon. While to the eye there is a difference in the form of the rods, the question is whether there is any real difference in the purposes and modes of operation of the same. The grooves called for in the Farwell patent are primarily intended to engage with the lugs on the blade, so that when the rod is slipped therein they form a connection between the blade and the rod. This connection could have been secured by causing the lugs to embrace the entire rod, but in that event a space would have been left between the blade and the oven, through which the air and heat would pass, and, to avoid this undesirable result, Farwell provided a method of connecting the blade and rod, wherein the lugs did not pass entirely around the rod, but engaged only with the upper part of the rod. This was accomplished by grooving out the sides of the rod for a sufficient depth to permit the curved ends of the lugs to slip into this space, and by engaging with the upper side of the rod to form the desired connection. This connection, however, is formed by the combination of the upper surface of the rod with the curved lugs, and is not aided by the lower lip or edge of the groove, which can be wholly removed, and yet leave the connection between the rod and the blade unaffected. In the defendant's damper the rod does not show the deep grooves of the Farwell patent, but the connection between the blades and the rod is secured by curved lugs which do not pass entirely around the rod, but the ends of which engage with the sloping sides of the rod, and the connection between the blade and rod is formed by the upper part of the rod resting in the curvature of the ends of the lugs; and the only difference in the mode of connection shown in the dampers manufactured by the parties complainant and defendant is that the slope of the sides of the rod with which the ends of the lugs engage in the Farwell damper is somewhat greater or more abrupt than that found in defendant's damper. The difference is in form only, and but slight at that, and not at all in the mode of securing the connection of the blade and rod in the particulars named. So far as the mere matter of form is concerned, it is disposed of by the ruling of the supreme court in Ives v. Hamilton, 92 U. S. 426, 430, 23 L. Ed. 494, 495, wherein it is said:

"The substitution of guides at the top, made crooked by a broken line instead of a curve line, is too transparent an imitation to need a moment's consideration. A curve itself is often treated, even in mathematical science, as consisting of a succession of very short straight lines, or as one broken line constantly changing its direction. * * * At all events, in mechanics, when, as in this case, a broken line is used instead of a curve, being deflected at one or more points by a very slight angle, and performing precisely the same office as a curve similarly situated, the one is clearly the equivalent of the other."

Coming now to the third element in the combination, to wit, the mode of fastening the blade upon the rod when it has been adjusted so as to cover the flue opening, we find in the specifications of the Farwell patent the statement that "through the blade, A, I pass the bolt, F, which prevents the blade from sliding on the rod when it is in position, and allows the blade to be set in any position on the

rod." In the second claim of the patent there is included in the combination "a screw for confining the blade to its adjusted position, substantially as described." In the first claim it is described as a screw and nut fastening. Neither in the specifications nor in the claims of the Farwell patent is there any further description of the place or mode by which the fastening of the blade to the rod is to be secured, save that it is by means of a screw and nut. In the defendant's damper the screw and nut are used to draw the curved ends of the lugs into such close connection with the sides of the rod that the blade will no longer slide upon the rod, and therefore the mode of fastening used in the defendant's damper certainly is by means of a screw fastening,—that is, a bolt passed through the blade with a screw thread on the end, upon which a nut is placed,—and by the tightening of this screw the fastening of the blade to the rod is secured; and it is difficult to see how the means employed in the defendant's damper can be excepted out from the mode described in the Farwell patent. But it is argued that in fact there is a difference in the mode in which the screw fastening operated in the dampers manufactured by complainants and the defendant, in this: that in the form adopted by the complainants the head of the screw and the nut on the opposite end impinge directly on the opposite sides of the rod, and by clamping the same prevent a lateral motion of the blade on the rod, whereas in the damper manufactured by defendant the screw and nut are not brought into contact with the rod, but, when tightened, they cause the lugs on the blade to press closely against the sides of the rod,—that is, to clamp it,—and thereby prevent a lateral motion of the blade on the rod; and therefore a difference is shown in this respect between the dampers of sufficient magnitude to maintain the claim that the defendant's damper does not utilize the exact combination covered by the Farwell patent. In support of this contention it is argued that this patent, in view of the state of the art at the date of its issue, must be narrowly construed, and is not entitled to the benefit of the rule that ordinarily protects the inventor and patentee against the use of mechanical equivalents. In one sense it may be true that the Farwell patent is limited within narrow boundaries, but within those boundaries it possesses elements of novelty and usefulness, which entitle it to protection against all efforts to appropriate its meritorious features under the guise of mere changes of form, or of the substitution of recognized equivalents. The rule to be followed is very clearly and forcibly stated by the circuit court of appeals for this circuit in National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co., 106 Fed. 693, 45 C. C. A. 544, wherein it is said:

"One who invents and secures a patent for a machine or combination which first performs a useful function is thereby protected against all machines and combinations which perform the same function by equivalent mechanical devices; but one who merely makes and secures a patent for a slight improvement on an old device or combination, which performs the same function before as after the improvement, is protected against those only who use the very device or improvement he describes, or mere colorable evasions thereof. In other words, the term 'mechanical equivalent,' when applied to the interpretation of a pioneer patent, has a broad and

generous signification, while its meaning is very narrow and limited when it conditions the construction of a patent for a slight and almost immaterial improvement.  *  *  *  But the great majority of patents falls between these two extremes. They are neither for pioneer inventions nor for improvements so slight as to be almost immaterial. While they do not evidence the first or the last step in the progress of the art to which they relate, they often make signal advances and protect useful improvements. The doctrine of mechanical equivalents conditions the construction of all these patents, and in determining questions concerning them the breadth of the signification of the term is proportioned in each case to the character of the advance or invention evidenced by the patent under consideration, and is so interpreted by the courts as to protect the inventor against piracy, and the public against unauthorized monopoly.  *  *  *  .The doctrine of mechanical equivalents is governed by the same rules, and has the same application, when the infringement of a patent for a combination is in question, as when the issue is over the infringement of a patent for any other invention.  *  *  *  Mere changes of the form of a device, or of some of the mechanical elements of a combination, secured by a patent, will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention."

Applying the rule thus stated to the facts of the case at bar, it follows that the difference in the application of the screw fastening in the dampers manufactured by the parties, if it can be held to be a difference in reality, is merely a substitution of a known equivalent, both methods being intended to accomplish the one result of fastening the blade to the rod.

There remains but one other variation in the construction of these dampers by which it is sought to differentiate the one from the other, and thus to escape the charge of infringement, and that grows out of the form of the rod. In the specifications of the Farwell patent the rod is described to be one of an ovate figure, resembling an acute triangle slightly rounded at the angles, and when the same is engaged with the lugs on the blade the narrower side is next to the blade. In the defendant's damper this position of the rod which is ovate in shape is reversed, the broader side thereof being next to the plate. In the Farwell damper the blade is adjusted so as to stand inwardly of the center of the rod, this position being given to it so that when the blade is thrown upon the oven plate it will lie flat thereon, thus affording little or no space for the passage of the air or heat beneath the blade. In the defendant's damper the blade is substantially at right angles with the center of the rod, and when placed upon the oven plate the blade will not lie flat thereon, for the reason that the lugs extend beyond the circumference of the rod. It is claimed that this constitutes a marked difference between the dampers. No good purpose, however, is effected by a mode of construction which prevents the close contact of the blade with the oven plate. This matter of contact between the blade and the oven plate is not a necessary part of a combination intended to supply a readily adjustable damper, and it is not referred to in the second claim of the Farwell patent. The difference between the dampers in this particular results from a mere change in form, which does not vary in any substantial particular the operation of the elements of the combination called for by the Farwell patent, and the only perceivable effect of

the change is to increase the liability for the passage of air and heat beneath the blade of the damper, which is a wholly undesirable result. Even if this resulting change in the position of the damper, when thrown upon the oven plate, had produced some beneficial effect, it could only be regarded as an improvement upon the operation of the Farwell combination, but that would not entitle the defendant to the use of the invention protected by the patent to Farwell. Thus, in Elizabeth City v. American Nicholson Pavement Co., 97 U. S. 126, 137, 24 L. Ed. 1000, 1005,—a case involving the infringement of the Nicholson patent for block pavements, the question turning upon the difference between the strips of board placed between the block, it being stated in the Nicholson patent that "the auxiliary strip may be about half the height of the principal block, but it must not be permitted to fill up the grooves permanently and entirely when the pavement is completed, or to perform any part of the pavement,"—it was said by the supreme court:

"The strips used by the defendants are substantially the same as here described, and perform the same office. The only difference in their construction and application between the block is that they are beveled by being made wider at the top than at the bottom, the extra width at the top part being let into a notch or groove in the block. If they perform the additional office of partially sustaining the pressure of the blocks and locking them together, they do not any the less perform the office assigned to them in Nicholson's pavement. Their peculiar form and application may constitute an improvement on his pavement, but it includes his."

In Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017, it is said:

"It may be true, as contended by the defendants, that the device used by them is in some respects better than that of the plaintiff; but this cannot relieve them from the charge of infringement, if the devices are substantially alike."

But, as already said, it is not shown that the difference in question produces any improvement over the combination shown in complainant's damper, and all that can be claimed for it is that it produces a slight change in the position of the blade when in contact with the oven plate,—a difference which does not affect in the slightest degree the operation of the Farwell combination in accomplishing its avowed object of producing a readily adjustable damper.

It is also contended that the form of the rod used by the defendant, and described in the patent of Ohnermus and Sanner, is preferable to that used by complainants' in that it is less liable to warp when subjected to heat. The file wrapper connected with this patent is in evidence, showing the action of the department upon the application therefor, from which it appears that, in order to induce the examiner to report favorably upon the application, after it had been twice rejected, it was stated that:

"From experience in the use of the shape of the stem shown in the Farwell patent, it has been found that the Farwell form of stem is liable to warp, whereas the applicant has produced a construction of stem which overcomes the disadvantage existing in the former construction of stem, which was approximately of hour-glass shape in transverse section. To the applicant's form of stem the first and second claims are now restricted."

It was upon this application that the patent was finally granted, and it is thus shown that the useful result claimed to follow from using a rod in the shape of that described in the patent and found in the dampers manufactured by the defendant is the lessened lia· bility to warp when in actual use. The same claim is advanced in defendant's brief, but the only evidence adduced in support of the assertion is the opinion of the expert witness A. S. Steuart, who, after stating generally that he thought the rod used by the defendant company would be less liable to warp than would the rod used by complainants, further testified that he did not recall having ever seen either of the styles of rod in a stove which had been used, thus showing that he had no knowledge based on experience,—a state· ment which falls far short of sustaining the assertion made to the patent office that experience in the use of the Farwell rod had shown its liability to warp. Not a witness was called on behalf of defendant to testify that he had ever known the Farwell rod to warp when in use, but the claim was left without support unless it be said that the mere theoretical opinion of the expert can be accepted in place of testimony based upon actual experience. On behalf of com- plainants it is shown that some 200,000 dampers of the Farwell patent have been sold within the past seven years, and no complaints of the warping of the rod have been made. On the evidence submitted it must, therefore, be held that this assumed superiority of the form of rod used by the defendant company is not proven to exist, and it cannot be held that the difference in the form of the rod causes it to perform any function other than those resulting from the use of the rod in the shape found in the Farwell patent, and the mere differ- ence in form between the rods is therefore of no importance; for, as is said by the supreme court in Machine Co. **v.** Murphy, 97 U. S. 120–125, 24 L. Ed. 935, 936:

"Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that, if two de- vices do the same work in substantially the same way, and accomplish sub- stantially the same result, they are the same, even though they differ in name, form, or shape."

But, if the evidence in the case had shown that the rod described in the Ohnermus and Sanner patent was less liable to warp than that used in the Farwell patent, that fact would not show that the rod described in the former patent performed any additional function, or performed the same function in a different or novel manner. It would only tend to show that the one rod would perform the same functions as the other for a longer period before it was rendered use- less by the heat of the stove, and it cannot be true that a valid patent can be granted for that which is only a mere strengthening of the parts of the combination, if the combination, as originally patented, furnished a practical, useful, and operative machine. Experience might show that it was desirable to strengthen certain parts of the combination in order to gain a longer life for its usefulness, but im- provements of this character would not call for the exercise of the inventive faculty, but only for the exercise of mechanical improve- ment, which in nearly every case follows from the actual use of the

invention, and which is recognized as being merely the improvement due to use of the machine. If these views of the actual working of the dampers manufactured under the Farwell patent, as compared with the working of the dampers manufactured according to the claims of the Ohnermus and Sanner patent, are substantially correct, there seems to be no escape from the conclusion that the latter must be held to infringe upon the combination protected by the Farwell patent.

In considering the question presented for determination I have viewed the same from the position taken by counsel for the defendant company, which is that the dampers manufactured by the defendant company were so manufactured under the rights conferred by the patent to Ohnermus and Sanner, the defendant claiming in the argument and brief to hold a license from such patentees, although it is not so averred in the answer; and, so viewing the case, the conclusion reached, as already stated, is that the defendant company, in the manufacture and sale of the dampers modeled in the form of those described in the patent to Anton Ohnermus and Henry Sanner, have infringed upon the rights of complainants secured to them by the letters patent No. 493,548, and the usual decree for an injunction and accounting in favor of complainants must be granted.