OTTUMWA BOX CAR LOADER CO. v. CHRISTY BOX CAR LOADER CO.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1914.)

No. 4046.

*(Syllabus by the Court.)*

1. TRIAL (§ 83*)—OBJECTION TO EVIDENCE—SUFFICIENCY—WAIVER.

The failure by the terms of the objection to give fair notice to opposing counsel of the reason for the objection to evidence, which the latter could easily have avoided while introducing his testimony, is a waiver of that objection.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 193–210; Dec. Dig. § 83.*]

2. APPEAL AND ERROR (§ 242*)—MATTERS REVIEWABLE—RULINGS ON OBJECTION.

A ruling by the trial court upon objections to evidence in equity must be obtained or refused and exception taken, and these proceedings made of record, to warrant a consideration of the questions they suggest in an appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1417–1425; Dec. Dig. § 242.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 62*)—ANTICIPATION—TESTIMONY TO ESTABLISH—REQUISITES.

The testimony of a former employé of a patentee, more than a decade after the date of the patent, that he himself made the invention, and the testimony of others that about the time the device was patented he made statements to that effect to them, is insufficient to establish that fact in the face of testimony to the contrary of the patentee and other witnesses. Testimony to establish such an anticipation must be clear and conclusive.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 78; Dec. Dig. § 62.*]

4. PATENTS (§ 26*)—COMBINATION OF OLD ELEMENTS.

A new combination of old elements, whereby a new and useful result is produced or an old result is attained in a more facile, economical, and efficient way, may be as securely protected by a patent as a new machine or composition of matter.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*

Patentability of combinations of old elements as dependent on results attained, see note to National Tube Co. v. Aiken, 91 C. C. A. 123.]

5. PATENTS (§ 26*)—RIGHT TO PATENT—INDEPENDENT INVENTIONS.

Where the advance toward the thing sought is gradual, and several inventors independently form several combinations which accomplish the general result with varying degrees of operative success, each is entitled to his own combination as long as it differs from those of his competitors and does not include theirs.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 27–30; Dec. Dig. § 26.*]

6. PATENTS (§ 245*)—INFRINGEMENT—DOCTRINE OF MECHANICAL EQUIVALENTS—APPLICATION.

The doctrine of mechanical equivalents is governed by the same rules and has the same application in a case in which the infringement of a patent for a combination is in question as in cases where the issues are over the infringement of patents for machines or compositions of matter.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 386; Dec. Dig. § 245.*]

7. PATENTS (§ 64*)—COMBINATIONS—ANTICIPATION.

It constitutes no anticipation and no defense to a claim of infringement that one or more elements of a patented combination, or one or more parts of a patented improvement, may be found in one old patent or publication and others in another and still others in a third.

It is indispensable that all of them, or their mechanical equivalents, be found in the same description or machine where they accomplish substantially the same result by substantially the same means as does the patented combination.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 79; Dec. Dig. § 64.*]

8. PATENTS (§ 168*)—CLAIMS—ACQUIESCENCE IN REJECTION—ESTOPPEL.

While one who acquiesces in the rejection of his claim on references is estopped from maintaining that an amended claim covers the combinations and devices shown in those references, or that it has the breadth of the rejected claim, this is the limit of the estoppel.

He is not estopped from claiming and securing by an amended claim every improvement and combination he has invented that was not disclosed by the references on which his original claim was rejected.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. § 168.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

9. PATENTS (§ 167*)—CONSTRUCTION—SPECIFICATION AND CLAIMS.

The specification of a patent which forms a part of the same application as its claims must be read and construed with the latter, not for the purpose of expanding, nor for the purpose of limiting or contracting the claims, but for the purpose of ascertaining their true meaning and the intention of the parties when they were made and allowed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

10. PATENTS (§ 167*)—CONSTRUCTION—SPECIFICATION AND CLAIMS.

General language in a claim, which points to an element or device more fully described in the specification and drawings of which it is a part, is limited to such an element as is there described.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 243; Dec. Dig. § 167.*]

11. PATENTS (§ 328*)—VALIDITY—INFRINGEMENT.

Claims 1 and 2 of letters patent No. 648,897, issued May 1, 1900, to Joseph M. Christy for a box car loader are valid and infringed.

Appeal from the District Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Suit by the Christy Box Car Loader Company against the Ottumwa Box Car Loader Company. From decree for plaintiff, defendant appeals. Affirmed.

Wallace R. Lane, of Chicago, Ill., for appellant.

J. Ralph Orwig and Charles Hutchinson, both of Des Moines, Iowa (Orwig & Bair and Clark & Hutchinson, all of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. This is an appeal from a decree that Joseph M. Christy was the first and sole inventor of that combination of mechanical devices constituting a box car loader which was patented to him by letters patent No. 648,897, issued May 1, 1900, that this patent had been assigned to the plaintiff below, the Christy Box Car Loader Company, a corporation, that the defendant below, the Ottumwa Box Car Loader Company, a corporation, had infringed the rights secured by the first and second claims of this patent, and that it was thenceforth enjoined from so doing.

[1] The defendant first contends that the court below should have found that the patent had never been assigned to the plaintiff because the signatures to the two assignments, one from the patentee to Ellen M. Christy and the other from Ellen M. Christy to the plaintiff, were not proved by the subscribing witnesses thereto, but by the testimony of Joseph M. Christy. That objection, however, was not made when the testimony of Christy and the certified copies of the assignments were introduced in evidence, and it was thereby waived. The plaintiff presented the original assignments for the inspection of counsel for the defendant, proved that the signatures to them were genuine by the testimony of Christy, and introduced in evidence certified copies of the records of them in the Patent Office. The only objection was

made before the examiner who was taking the evidence, and it was that the original assignments and certified copies were not proved, were incompetent to effect the transfer of the patent, and a motion was made before the examiner to strike out all the testimony of Christy in relation thereto as incompetent. Conceding, but not admitting, the rule of evidence counsel invokes, to the effect that Christy was not a competent witness to prove the signatures to the assignments until the plaintiff established the fact that the subscribing witnesses to those assignments were dead or unavailable, the objection made was insufficient to invoke this rule, because it failed to suggest to opposing counsel or the court the technical objection upon which counsel rely. The failure to give fair notice to opposing counsel of the grounds of an objection to evidence, which the latter could easily have avoided while introducing his testimony, is a waiver of that objection, Guaranty Co. of North America v. Phenix Ins. Co., 124 Fed. 170, 175, 59 C. C. A. 376, 381, and the title to the patent was sufficiently proved by the testimony of Christy to the signatures, the presentation of the originals to opposing counsel, and the introduction of the certified copies from the Patent Office.

[2] Moreover, the objection which has been considered was never called to the attention of the court below, or ruled by it, and an appellate court cannot declare that the trial court erred in a ruling that it has never made upon a question never presented to it. Objections to evidence and motions noted by an examiner in the taking of testimony in equity must be ruled by the court, and exceptions must be taken to those rulings, and both rulings and exceptions must be made a part of the record before they become reviewable in the court above. Goodwin v. Fox, 129 U. S. 601, 630, 9 Sup. Ct. 367, 32 L. Ed. 805; Gorham Mfg. Co. v. Emery-Bird-Thayer Dry Goods Co., 104 Fed. 243, 43 C. C. A. 511.

[3] It is contended that the court below should have found that John Moses, and not Christy, conceived and constructed the combination of mechanical devices which constituted the box car loader patented to Christy. When the first box car loaders were constructed on the principle of the combination described in the patent in suit, Christy was the president and manager of the Christy Coal Company, and was operating their mines, and Moses was one of his employés. Christy directed Moses to construct these loaders, and superintended his work. Moses was his master mechanic. After the loaders were completed Christy applied for and obtained a patent for the combination they embodied in his own name. His application was filed July 26, 1898, and his patent issued May 1, 1900. Moses never instituted any legal or equitable proceeding to question Christy's invention of these combinations, or his title to the patent, but in March, 1913, after this suit was brought, he testified on behalf of the defendant below that he was, and that Christy was not, the inventor thereof, and several witnesses came at the call of the defendant to testify that Moses claimed in conversations with them, about the time the loaders were constructed or shortly thereafter, either that he or he and Christy conceived the principle of and made the combination they illustrate. Moses also testified that

in 1902, in consummating the purchase of a house, he signed a written agreement to buy it and to surrender therefor a note indorsed by Christy and all claims he held in or against the patent. On the other hand, Christy and other witnesses came to say that he conceived the principle of the loader patented to him and directed its embodiment by Moses, his employé, in the machine. The testimony on this issue is therefore conflicting. The legal presumptions, that arising from the patent and that arising from the undisturbed title and use of the patented monopoly by Christy and his successors in interest for more than a decade, are in favor of the claim of the patentee. Christy was the man who was seeking and who needed a box car loader, and Moses was his employé, hired and paid to do as he directed. It is easy for one, employed to construct a machine upon a principle disclosed by his employer, to come to think and to say as he works out the mechanical details, and afterwards to believe and testify, that the invention itself was his. But testimony of this nature produced by an alleged infringer, to destroy a patent unchallenged for years, ought not to prevail unless it is clear and conclusive. Thomson-Houston Elec. Co. v. Winchester Ave. Ry. Co. (C. C.) 71 Fed. 192, 199; Eastern Dynamite Co. v. Keystone Powder Co. (C. C.) 164 Fed. 47, 56; United Shirt & Collar Co. v. Beattie, 149 Fed. 736, 79 C. C. A. 442, 447. All the testimony upon this issue has been read and weighed, but it fails to convince that Moses was the original inventor of the patented combination, much less to persuade that the court below fell into any error of law or made any such mistake in its consideration of the evidence as can overcome the strong presumption that its finding and decree upon this conflicting evidence was correct. Warren v. Burt, 58 Fed. 101, 106, 7 C. C. A. 105, 110; Gorham Mfg. Co. v. Emery-Bird-Thayer Dry Goods Co., 104 Fed. 243, 244, 43 C. C. A. 511, and cases there cited.

It is specified as error that the court below decided that the patent was valid, and that the defendant infringed it. Modern box cars are about 40 feet long. Coal must be loaded into the ends of these cars, and the art is to receive this coal from a chute inserted in one door of the car and load it into the extreme ends of the car with machinery, without shoveling or handling it by manual labor. The plaintiff and the defendant are and have been competitors in the business of making and selling box car loaders. For many years the plaintiff has made and sold the combination patented to Christy on May 1, 1900, upon his application of July 26, 1898. The defendant has made and sold a combination operated on the principle described in letters patent No. 632,202, issued to Phillips and Hunt, August 29, 1899, on an application filed December 22, 1898. About the year 1912, however, just before this suit was instituted, the defendant commenced to make and sell box car loaders made on the principle described, and embodying the combination disclosed in the patent to Christy, and it is the manufacturing and selling of these loaders that the court below has enjoined.

The principle or mode of operation of the Christy combination is to receive the coal as it descends from the chute on a moving endless

carrier about eight feet long, consisting of steel cross pieces placed so near together that no coal can fall through between them, and attached at their ends to the links of two endless chains which run over and are driven by sprocket wheels at the ends of the carrier, which are mounted on the side plates of a carrier frame capable of turning in a horizontal plane. The sprocket wheels, and hence the endless carrier, are driven by an engine or other suitable power, and are capable of throwing the coal as it strikes the platform to the extreme end of the largest box car, or to any less distance. By a reversal of the engine or power the carrier may be made to throw the coal to the opposite end of the car. The carrier is provided with upstanding partitions which catch the coal, prevent it from sliding on the carrier, and assist in throwing it to the end of the car. The combination devised by Christy to avail himself of this principle or mode of operation consisted of a main frame mounted on trucks on a permanent platform on the side of the car opposite the coal chute, so that the end of this main frame upon which the carrier was mounted on a frame capable of turning in a horizontal plane could be moved by an engine mounted upon the outer end of the main frame, or by a belt or other similar device, driven by suitable power into the car so that the carrier would stand under the coal chute when it had been inserted from the opposite side of the car, a carrier frame, so mounted on the main frame that it could be readily turned in a horizontal plane, an endless carrier made of crosspieces of steel, placed so close together as to prevent fine coal from falling between them, attached to the links of endless chains driven by sprocket wheels on shafts supported by the sides of the carrier frame, driven by the engine or other suitable power at such speed as to throw the coal when it fell on the endless carrier to the end of the largest box car, or to any less distance, as desired. The carrier frame and the carrier in Christy's combination are about eight feet long, are introduced into the car endwise, and then turned until they stand lengthwise of the car. The carrier is provided with upstanding crosspieces or partitions to prevent the coal from sliding along the carrier and to carry and throw it as desired, and it is capable of moving at great speed from 400 feet to 1,000 feet per minute, or at such less speed as may be desired.

The principle or mode of operation of the Ottumwa loader, made and sold by the defendant after patent No. 632,202, is to receive the coal from the chute into a curved trough about 12 or 14 feet long, consisting of a bottom and sides without end pieces, mounted on a pedestal capable of turning in a horizontal plane, and provided with a tight-fitting sliding partition or pusher, attached through a slot in the bottom of the trough to a chain which, by means of power from the engine or elsewhere, is dragged from one end of the trough to the other and back again, and in that way made to scrape the coal out of the trough. In operation the sliding partition is placed at one end of the trough, and the trough is then moved along under the chute until it is loaded by the coal falling upon it, and is extended from the middle of the car towards the end of the car as far as possible, or about 12 to 14 feet. The sliding partition is then dragged by

means of the chain beneath the trough along the trough, and made to push and scrape the coal out of the trough into the car, and when this is done the operation is reversed and coal is scraped out of the trough into the other end of the car.  The Ottumwa combination used to operate this principle consisted of a main frame, mounted on wheels on shafts upon a permanent platform at the side of the car opposite the coal chute, on which the trough and its pusher were so mounted upon a pedestal or frame capable of turning in a horizontal plane, that they could be moved by an engine mounted on the other end of main frame, or by other suitable power, into the car so that the trough would stand beneath the coal chute on its pedestal or frame, upon which it could be turned to a position lengthwise of the car, and could be moved longitudinally, and a partition or pusher fitting the trough and a chain beneath the trough attached to the pusher actuated by the engine or other like power.

The advance in the art over the Ottumwa device marked by the combination of Christy is that in the use of the former the inertia of a stationary mass of coal in the trough and its friction against the bottom and sides thereof must be overcome by the use of great power, while this is avoided in the use of Christy's device by catching the coal in a small stream as it flows from the chute upon the rapidly moving carrier and throwing it immediately and continuously to its destination; that in the use of the former time is required to load and then to unload the trough, while in the use of the latter the coal may be placed at its destination in the car without any such loading or unloading; that even to load a car 14 feet from the middle of it a trough 14 feet long must be provided, because when a load of coal is pushed out of such a trough it cannot be thrown, but will fall near the end of the trough, while in the use of the latter a carrier 8 feet long proves sufficient to throw the coal to the end of the largest box car, and that on account of the narrowness of a box car and of its door a rigid trough more than 14 feet long cannot be introduced into the car, so that in a car 42 feet long there will be about 7 feet at each end that cannot be well loaded by the use of the Ottumwa combination, while in the use of Christy's combination the coal can be loaded at the extreme ends of the car, where, on account of the greater strength of the car over the trucks, the bulk of it should be placed.  It was this advance in the art that caused the commissioner to grant the patent to Christy, caused the defendant to substitute in 1912 Christy's mode of operation and combination with its endless carrier for its own combination with its trough and pusher, and caused the court below to sustain the claim of Christy as an inventor and to issue the injunction against the use of his combination by the defendant.

The claims of the patent which were adjudged infringed are:

"1. A box car loader, comprising in combination a device capable of movement into or out of a box car, a frame on said device pivotally mounted to be capable of turning in a horizontal plane, an endless conveyer on the frame provided with suitable crosspieces to thereby form a platform for receiving coal and carrying it to either end of the frame, and means for driving said conveyer in either direction, so that coal may be thrown to any desirable distance within the car.

"2. A box car loader, comprising a device capable of movement into or out of a box car, a frame on said device pivotally mounted to swing in a horizontal plane, one or more endless chains on said frame, a platform on the chain or chains extending to the ends of the frame, and in position to receive coal from a chute introduced in the opposite side of a box car, and means for driving the platform in either direction, for the purposes stated."

[4] It is claimed that Christy's combination and these claims are anticipated by the prior state of the art. It is not claimed, and it is probably not true, that any of the mechanical elements of which Christy's combination is composed is new, and this, like most modern patents, is a patent for a new method of combining old mechanical devices. But a new combination of old elements, whereby a new and useful result is produced, or an old result is attained in a more facile, economical, and efficient way is as securely protected by a patent as a new machine or composition of matter. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 707, 45 C. C. A. 544, 558.

[5] Where the advance towards the thing desired is gradual and several inventors form different combinations which accomplish the result sought with varying degrees of operative success, each is entitled to his own combination as long as it differs from those of his competitors and does not include theirs. Railway Co. v. Sayles, 97 U. S. 554, 556, 24 L. Ed. 1053; McCormick v. Talcott et al., 20 How. 402, 405, 15 L. Ed. 930: Stirrat v. Excelsior Mfg. Co., 61 Fed. 980, 981, 10 C. C. A. 216; Griswold v. Harker, 62 Fed. 389, 391, 10 C. C. A. 435; Adams Electric Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 440, 23 C. C. A. 223; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 712, 45 C. C. A. 544, 563.

[6] The doctrine of mechanical equivalents is governed by the same rules, and has the same application, in a case in which the anticipation or infringement of a patent for a combination is in question as in cases where the issues are over the infringement of patents for machines or compositions of matter. Belding Mfg. Co. v. Challenge Corn Planter Co., 152 U. S. 100, 14 Sup. Ct. 492, 38 L. Ed. 370; Seymour v. Osborne, 11 Wall. 516, 542, 548, 20 L. Ed. 33; Imhaeuser v. Buerk, 101 U. S. 647, 653, 25 L. Ed. 945; Griswold v. Harker, 62 Fed. 389, 10 C. C. A. 435; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 711, 45 C. C. A. 544.

[7] It constitutes no anticipation and no defense to a claim of infringement that one or more elements of a patented combination, or one or more parts of a patented improvement, may be found in one old patent or publication, and others in another, and still others in a third. It is indispensable that all of them, or their mechanical equivalents, be found in the same description or machine, where they do substantially the same work by the same means. Imhaeuser v. Buerk, 101 U. S. 647, 660, 25 L. Ed. 945; Bates v. Coe, 98 U. S. 31, 48, 25 L. Ed. 68; Latta v. Shawk, 1 Bond, 259, Fed. Cas. No. 8116; Eickemeyer Machine Co. v. Pearce, 10 Blatchf. 403, Fed. Cas. No. 4,312; Mfg. Co. v. Steiger (C. C.) 17 Fed. 250, 252; National Cash Register Co. v. American Cash Register Co., 3 C. C. A. 559, 53 Fed. 367; Rhodes v. Lincoln Press Drill Co. (C. C.) 64 Fed. 218,

219; Packard v. Lacing Stud Co., 16 C. C. A. 639, 641, 70 Fed. 66, 68; J. L. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 265, 93 C. C. A. 561. Bearing in mind these indisputable principles of the law, let us see whether or not Christy's mode of combining his old elements was shown anywhere in the prior art cited by counsel for the defendant. It was not in the endless carrier belt with upstanding projections operated by chains over sprocket wheels to carry grain from a warehouse into a car disclosed in patent No. 472,454 to Hastings, nor in the counterpart conveyers on a sliding carriage upon a stationary sideway under which the car to be loaded was to be placed for the purpose of loading it with coal, nor in the other machinery shown in patent No. 475,236, issued May 17, 1892, to Compton, and under the rule last stated these patents are immaterial to any issue in this case. The combinations they disclose lack these elements of Christy's combination, a main frame on the end of which the frame of the carrier and the carrier itself may be introduced through the door of the box car, and the carrier frame capable of turning in a horizontal plane.

The complicated device shown in patent No. 619,191 to Lamb, issued February 7, 1899, falls under the same rule. While it discloses a complex combination whereby an endless carrier may be introduced into a box car and may be there driven, it lacks these essential elements of Christy's combination, the short reversible carrier and the short frame upon which it is mounted, capable of turning in a horizontal plane within the car. In the operation of Lamb's device it is necessary, in order to load the car, to first load one end of the car, then withdraw it from the car, run it into the other end, and when that is loaded draw it out again and load the middle of the car. Neither all the elements of Christy's device, nor his method of combining his elements, nor his easy, economical, and efficient way to load a car are either found or suggested by the impractical and useless combination of Lamb.

Patents No. 344,595 to Ramsay, issued June 29, 1886, No. 512,575 to Bond, issued January 9, 1894, No. 525,181 to Beck, issued August 28, 1894, and others of like character, are not material as alleged anticipations, but they are curious and interesting illustrations of the gradual advance in the art. They disclose attempts to load the ends of box cars with coal by receiving it in the middle of the car on stationary platforms or in troughs, and then knocking it to the ends of the cars by reciprocating paddles, shovels, or knockers passing rapidly over and in close proximity to the face of the platform first in one direction and then in the other. Beck's patent for example shows a shovel projecting downward from a shaft which in operation is given a reciprocating motion which causes its lower end to pass 100 times in a minute close to the bottom of a stationary pan in which the coal is received from the chute. These devices have been superseded because they do not drive the coal uniformly where desired, because they break and scatter it, and because they drive some of it against the end and sides of the car with such force as to injure it, while other parts of it not fairly struck receive too slight a movement.

The next advance in the art after the knockers was the conception and construction of the scraping combinations, devices whereby the coal was received in troughs or on platforms in the middle of the car and unloaded therefrom by scraping it out of the troughs or off of the platforms by upstanding partitions dragged over them by chains actuated by engines or other suitable power. The combination used by the defendant before it appropriated Christy's principle and combination is a good illustration of each of these scrapers, and it has already been described. Examples of them are portrayed in the patent to Phillips and Hunt No. 570,880, issued November 3, 1896, where the coal is received in a trough, and when the trough has been loaded a single sliding partition is drawn by power actuating a chain beneath the trough which is fastened to a bar attached to the lower edge of the partition, which is adapted to move through a longitudinal slot in the bottom of the trough from one end of it to the other, thereby scraping the coal out of the end of the trough, in the patent to Phillips and Hunt No. 632,202, issued August 29, 1899, which with the exception of details of construction immaterial here discloses the same combination operated on the same principle, in the patent to Dierdorff No. 575,028, issued January 12, 1897, which describes a like combination of a trough to receive and hold the coal and a single upstanding partition, which the patentee calls a plunger, and which is dragged along the trough and made to unload it by scraping the coal out of one of its ends by means of parallel chains traveling longtitudinally in the trough and actuated by suitable power, and in the patent to Ingalls No. 488,564, issued December 27, 1892, upon which counsel for the defendant seem to lay much stress. But when the description of the combination of that patent is carefully examined it is found to be nothing but a stationary platform on which the coal is received, and from which it is unloaded by scraping it off with many upstanding partitions instead of one attached to endless chains drawn by suitable power. This patent shows an appreciation by the patentee of the difficulty of delivering the coal at the ends of the cars and a determined attempt to overcome it by expanding the receiving platforms to the extreme ends of the cars. Neither he nor any one could, by the use of the scraper principle or mode of operation, deliver the coal at the ends of the cars unless he could get a trough or platform longer than could be introduced in a single longitudinal section through the door of the car. Perceiving this, he conceived and described a combination of a platform to receive the coal and a scraper to unload it in three sections, two of which were to be folded up as they were introduced through the door of the car and after their introduction were to be extended from the third or middle section to the ends of the car respectively and then retracted at will. If Christy's principle or mode of operation by receiving the coal upon a tight rapidly moving carrier and never permitting it to reach a platform beneath it had ever suggested itself to his mind, his sections would have been worse than useless, and he never would have constructed them. What he did was to make a sheet metal flooring $R$ for his platform, resting on crossbars supported on the side bars of the platform. In his specifica-

tion he calls this his sheet metal flooring, and in one of his claims he calls it a stationary plate attached to the platform, and it is this flooring that receives and sustains the coal as it drops from the chute. To remove the coal from the floor of this platform he provides two endless chains with crossbars operated by power in either direction. He calls these chains and crosspieces an "endless apron or conveyer," but the drawings disclose the fact that the spaces between the crossbars are wider than the crossbars themselves, so that they constitute in fact nothing but upstanding partitions, and their actual function is to push and scrape the coal along the floor of the platform, until it falls off one of its ends. The endless chains and crosspieces of Ingalls constitute a conveyer in the same sense that the common scraper drawn by a team of horses is a conveyer of the rocks and dirt it scrapes along the surface of the earth, but in no other sense. They do not receive and carry the weight and burden of the coal as does the carrier of Christy, and the facts that Ingalls placed his crosspieces so far apart that they could not constitute a carrier, that he provided the sheet metal flooring and the folding extensions, demonstrate the fact that his combination never suggested to his mind, inventor though he was, in fact it probably never suggested to the mind of any one, either the short rapidly moving throwing carrier of Christy or his mode of operation. There are many other patents in the record, but none that disclose combinations nearer that of Christy than those that have been reviewed. There is some testimony regarding box car loaders made and used by Phillips and Hunt in 1895 and 1896, but it has failed to convince that they ever conceived, made, or used a combination of devices capable of operating on the principle of Christy's patented combination prior to the date of his patent. Our minds are confirmed in this conclusion by the fact that Phillips and Hunt subsequently secured patents No. 570,880 and No. 632,202 on their inventions in which no intimation of Christy's mode of operation or of his combination is found, and their eagerness to appropriate them now makes it more than probable that if they had been aware of them then they would have embodied them in their applications and secured them by their patents. This completes the review of the prior state of the art as it is disclosed by the record in this case. The result is that we agree with the court below that there is no patent, publication, combination, or device disclosed therein which anticipated or described the principle or mode of operation, or the method of combination of the mechanical elements to practice it which are described in the specification and secured by the first two claims of the patent to Christy.

[8] But counsel say that Christy's claims were so limited and he was so estopped by the fact that after the rejection of one of his claims in the Patent Office upon Phillips and Hunt's patent, No. 570,-880, he abandoned it, and subsequently substituted for it by amendment claim 1 in suit, and by the fact that in an interference with one Willson in the Patent Office priority of invention was awarded to Willson, that the plaintiff may not maintain and enforce the claims of Christy's patent under consideration. It is true that a patentee who acquiesces in the rejection of his claim on references cited in the

Patent Office and accepts a patent on an amended claim is thereby estopped from maintaining that the latter claim covers the combinations shown in the references, and that it has the breadth of the claim that was rejected. But this is the limit of the estoppel. One who acquiesces in the rejection of his claim because it is said to be anticipated by other patents or references is not thereby estopped from claiming and securing by an amended claim every known and useful improvement that is not described by those references. National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 714, 45 C. C. A. 544; J. L. Owens Co. v. Twin City Separator Co., 168 Fed. 259, 268, 93 C. C. A. 561; O'Brien-Worthen Co. v. Stempel (C. C. A.) 209 Fed. 847, 851.

[9] The specification of a patent which forms a part of the same application as its claim must be read and construed with the latter, not for the purpose of expanding nor for the purpose of limiting or contracting the claims, but for the purpose of ascertaining their true meaning and the intention of the parties when they were made and allowed. Seymour v. Osborne, 11 Wall. 516, 547, 20 L. Ed. 33; O. H. Jewell Filter Co. v. Jackson, 140 Fed. 340, 344, 72 C. C. A. 304.

[10] And general language in a claim which points to an element or device more fully described in the specification is limited to such an element as is there described. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 493, 23 L. Ed. 952; Mitchell v. Tilghman, 19 Wall. 287, 387, 22 L. Ed. 125; Expanded Metal Co. v. Board of Education of St. Louis, 111 Fed. 395, 397, 49 C. C. A. 406. Patent No. 570,880 to Phillips and Hunt did not, as we have seen, anticipate, describe, or claim the principle or combination of a short tight carrier with the other mechanical elements of Christy's combination, but was limited to the combination of a trough and a sliding scraping partition to unload it with other mechanical elements. In their specification and claims, however, Phillips and Hunt had called this trough and scraper a conveyer and Christy had made this claim: "A box car loading apparatus comprising in combination a device capable of movement into or out of a box car, a frame on the end of said device capable of turning in a horizontal plane, an endless conveyer on said frame and means for driving this conveyer in either direction so that coal may be discharged successfully from each end of the conveyer for the purposes stated," which was rejected by the examiner on this patent No. 570,880, undoubtedly because the word "conveyer" therein had too broad a significance, and thereupon Christy amended his claim so as to describe clearly his carrier as it is now described in claim 1 of the patents in these words:

"An endless conveyer on the frame provided with suitable crosspieces to thereby form a platform for receiving coal and carrying it to either end of the frame."

[11] As neither the mode of operation nor the combination of such a conveyer with the other elements of Christy's combination was disclosed or suggested by the specification or claims of patent No. 570,880, and the latter patent was limited to the combination of its other mechanical elements therein described with the trough and

scraper, neither Christy nor the plaintiff was estopped from or limited in the enforcement of the monopoly of his combination described in claims 1 and 2 of his patent.

Nor does the adjudication of the interference with Willson, who subsequently abandoned his application for a patent, present any better defense. He was seeking a patent on another scraper conveyer consisting, among other elements, of a trough for receiving the coal and two endless chains with downward extending partitions thereon, which he termed "flights" and of which he said in his specification:

"The chains and trough are so related that the flights are carried along the bottom of the latter and scrape or push the coal from the center of the car toward one end or the other. * * * The conveyer acts by scraping, it being of skeleton character, with cross flights that push the coal along the bottom and sides of the stationary trough."

As Willson's claimed combination was limited by his specification and claims to the combination of other devices with this scraper mechanism, the only effect of the adjudication in his interference with Christy was to determine that he invented or discovered that scraper combination before Christy, and as the mode of operation and the combination of Christy are not the scraper mode of operation or the scraper combination of Willson, and are not anticipated thereby, that judgment in no way estops or limits the right of Christy or his successors in interest to maintain the monopoly of his combination and mode of operation adjudged and granted to him by the examiner of patents after this adjudication upon the interference had been made.

The defendant has not omitted to make another attack upon Christy's combination, which is generally made upon every patented combination, and that is that it is a mere aggregation of old elements and not a combination subject to patent. It is true that there is no invention in the mere assembling of old elements into an aggregation in which each element performs its own independent function only and in which no new principle or mode of operation or new result is produced. But Christy's combination of elements was new; it was not disclosed in the prior art; no one had ever made it before him. The independent functions of his various elements were modified and extended by his combination so that together they operated on a new principle and by a new mode and produced a new and better result. The ordinary function of the chief element of this new combination, the endless carrier which was to convey to its ends and there drop its burdens, was so qualified and extended by its combination with the other elements described that it readily caught and threw coal 14 feet beyond its ends. A new principle or mode of operation was invented in the art of loading box cars, and practiced by the use of Christy's combination, whereby the coal as it descended the chute into the car was caught on Christy's rapidly moving tight-fitting steel slat carrier, held, carried, and thrown by that carrier and the upstanding steel partitions thereon to the end of the car as fast as it came down the chute, and the new and useful result of loading the coal into the ends of the cars or at any less distance, as desired, uniformly and continuously as fast as it descended the chute, was at-

tained.   Not only this, but the further object was accomplished by this combination of loading such cars at their ends in an easier, quicker, and more economical way than they had ever been loaded by any other method.   No mere aggregation of the old elements of this combination could have achieved these results, and Christy's combination fell far within the limits of a patentable combination.

His combination has gone into extensive and successful commercial use, but in the commercial combination the carrier is slightly curved, so that its ends are higher than its middle so that in operation the coal may be thrown above the horizontal plane in which it leaves the carrier, while the carrier portrayed and described in Christy's patent has a flat top, and counsel for the defendant contend that there was no utility in the combination described in the patent of which the flat topped carrier was the main element.   The argument is not persuasive.   The record satisfies that the combination in the exact form described in the patent would throw the coal to the ends of the cars, was practical and useful, and that the utility and success of the commercial combination is attributable to Christy's discovery or invention of this mode of operation and combination, and not to the slight change in the form of the top of his carrier to which he was not limited by his specification or claims.

Finally counsel assail the validity of Christy's patent on the ground that there was no invention in the production of the principle and combination it discloses; that any mechanic skilled in the art could have conceived and produced them.   But the record and the fact that Phillips and Hunt, officers of the defendant and inventors of the scraper devices patented to them in 1896 and 1899, men who have been engaged for more than 15 years in searching for the best device to load box cars, have lately mounted in the sides of their old trough in place of their scraper the steel crosspiece carrier of Christy with its upstanding partitions, and have thereby rendered the bottom of their trough useless, have convinced that Christy's patented combination is the most efficient and economical box car loader yet produced. Manufacturers, owners of mines, skilled mechanics, and inventors for more than a decade before Christy's invention felt the need of and sought to find such a loader.   Ramsay in 1886, Bond and Beck in 1894, invented and patented knockers to bat the coal from stationary platforms in the middle of their cars to their ends, Ingalls in 1892, Dierdorff in 1897, Phillips and Hunt in 1896 and 1899, and many others, invented and patented scrapers to accomplish this desired end. Skilled mechanics studied and sought for the same purpose, but no one discovered the principle or invented the combination of Christy until he described it.   It is strenuously contended that the patent to Ingalls of his scraper loader was so suggestive that any mechanic skilled in the art on an inspection thereof could have produced the combination of Christy.   But the patent to Ingalls was issued in 1892, four years before Christy filed his application and four years before Phillips and Hunt obtained their first patent.   Phillips and Hunt were studying and hunting for the best combination of old elements to load box cars.   They were doubtless familar with the patent to In-

galls and with all the old elements of all these combinations. Yet they failed to find either the principle or the combination of Christy, and produced inferior combinations which they patented and used and for which they are now here fighting to substitute the combination of Christy. That combination and the mode of operation it uses were first invented and discovered by Christy, and in the light of these facts the commissioner of patents and the court below adjudged that his combination was the product, not of the skilled mechanic, but of the intuitive genius of the inventor. And the entire record in this court has led our minds to the same conclusion.

Was the defendant guilty of infringement? In view of the conclusions already reached and the rules of laws which have been cited, this question is no longer debatable. Before the defendant commenced to make and sell the infringing device it was making and selling, in competition with the plaintiff, a combination of the Phillips and Hunt trough for receiving the coal, a sliding partition to scrape it out of the trough with plain mechanical equivalents for the other elements of Christy's combination, to wit: (1) A device capable of movement into and out of a box car; (2) a frame on said device mounted to be capable of turning in a horizontal plane; and (3) means for driving their trough and scraper. Thereupon, just before the commencement of this suit, the defendant proceeded to make and sell a combination of Christy's endless carrier provided with Christy's steel crosspieces and upstanding partitions forming a platform for receiving the coal and carrying it to the end of the carrier with: (1) A device capable of movement into and out of a box car; (2) a frame on said device, mounted, to be capable of turning in a horizontal plane upon which this endless carrier was mounted; and (3) means for driving this endless carrier. In effect the defendant mounted Christy's endless carrier provided with its steel crosspieces set so close together that coal could not pass between them and uprights to hold the coal from sliding on the carrier, on the sides of its trough, dispensed with its sliding scraper therein, left the bottom of its trough without use or function, appropriated in its entirety the principle or mode of operation and the combination of Christy, and with them accomplished the same result which he attained. For the evidence has convinced that the box car loaders in which the defendant has embodied Christy's combination are capable of receiving the coal on the endless carriers and throwing it to the ends of the cars as do the plaintiff's.

The devices by which the various parts of the respective combinations of Christy and of the defendant are mounted and actuated differ in some particulars, but those differences present no defense to the charge of infringement because they are immaterial and the respective devices are mechanical equivalents of each other. And the conclusion is that the evidence in this case conclusively establishes the infringement found below.

This is not a case where a single inventor preceded all the rest and struck out something which underlay all the others. It is one of the great majority of cases involving patents in which progress in

the art has been made step by step, and many have discovered and patented methods and combinations to accomplish the desideratum. It is a just and equitable rule that where several inventors, as in this case, Ingalls, Phillips and Hunt and Christy, and many others, have formed and patented different combinations which accomplish the desired result with different degrees of operative success, each should be protected in his own combination so long as it differs from those of his competitors and does not include theirs. Christy's mode of operation and combination fall far within this rule, and they are more entitled to protection than those of the other inventors because they constitute the best and the most useful box car loader; and, while others may be permitted to make, use, and sell their patented combinations, they ought not to be allowed to appropriate that of Christy.

The result of the whole matter is that claims 1 and 2 of the patent to Christy are valid, they have been infringed by the defendant, and the decree below which enjoins the continuance of this infringement must be affirmed. It is so ordered.